SPRINGFIELD PARK DISTRICT, Plaintiff-Appellee, v. PATRICK BUCK-LEY, Defendant-Appellant.—SPRINGFIELD PARK DISTRICT, Plaintiff-Appellee, v. RAYMOND H. CHRISTIE, Defendant-Appellant.

Fourth District   Nos. 4—85—0136, 4—85—0137 cons.

Opinion filed January 28, 1986.

GREEN, J., dissenting.

George Tinkham, of Springfield (Samuel J. Cahnman, of counsel), for appellants.

Robert C. Walbaum, of Springfield, for appellee.

JUSTICE WEBBER delivered the opinion of the court:

Defendants were charged in the circuit court of Sangamon County with violations of a Springfield park district (district) ordinance No. 209-83, which in effect prohibits the operation of motorcycles on park roadways. The cases were consolidated for hearing, and after motions to dismiss the citations were denied, both defendants were found guilty at a bench trial and fined $50. Defendants have appealed.

The facts are not in dispute. Both defendants admit that they violated the ordinance. However, they contest the validity of the ordinance itself, which provides:

"No person shall drive, ride, propel or operate any motorcycle, motor bike, motor scooter, motor propelled two wheel drive vehicle or snowmobile within any park or upon any drive or driveway within any park." (Springfield, Ill., Park District Ordinance No. 209.83, sec. 3.1 (1983).)

The ordinance was initially enacted in 1966 and reenacted in 1983.

At the hearing on the motion to dismiss, the major witness was Clifford Riley, who was called by the district. He had been employed by the district as its police chief from 1966 to the time of his retirement in 1978. He stated that the ordinance had been enacted in 1966 as a result of problems encountered by off-the-road operation of motorcycles in the park system. He explained that cyclists would sometimes leave the road system and enter picnic areas, posing danger to children playing there. He also maintained that the cyclists would cut across golf courses, leaving tracks on the putting greens. Speeding was also a problem, and enforcement of ordinances against speeding was difficult because the cyclists would cut through the parks in an effort to elude district police officers.

According to Riley, most of the problems arose in the middle 1960's with the advent of imported, two-cycle motorcycles designed for off-the-road operation. Defendants presented Jeffrey Norris, executive secretary of the Illinois Motorcycle Dealers' Association. He stated that in 1979 the Federal government had imposed emission pollution standards with such stringent requirements that two-cycle machines could no longer be sold in the United States. He explained that since that time there are only two classes of motorcycles: off-the-road dirt bikes which are not street-legal and motorcycles licensed for highway use.

Norris also stated that he had conducted a survey of downstate park districts similar in size to Springfield's and that none of these districts prohibited the use of motorcycles in their parks.

Defendants have raised principal arguments on appeal: (1) whether the District was empowered to enact the ordinance, and (2) assuming such power, whether the ordinance is overbroad and hence constitutionally impermissible.

■ As to the first, park districts are non-home-rule units of government and hence have only the powers delegated to them by the legislature. (Ill. Const. 1970, art. VII, sec. 8.) At issue are two sections of the Park District Code (Code) (Ill. Rev. Stat. 1983, ch. 105, par. 1—1 *et seq.*). Section 8—1(d) describes the general regulatory power of park districts:

> "To pass all necessary ordinances, rules and regulations for the proper management and conduct of the business of the board and district and to establish by ordinance all needful rules and regulations for the government and protection of parks, boulevards and driveways and other property under its jurisdiction, and to effect the objects for which such districts

are formed." (Ill. Rev. Stat. 1983, ch. 105, par. 8—1(d).)

Section 8—7 grants park districts specific authority to control and regulate park driveways and provides in pertinent part:

"Any park district shall have power within its jurisdiction to designate by ordinance the whole or any part of two or more streets, roads, or, boulevards under the jurisdiction of any city, town or village within the boundaries of said district, as a public driveway, to be used for pleasure driving only; and also to lay out, establish, alter, extend, pave or otherwise improve and maintain the same and designate the same as pleasure driveways, to be used for pleasure driving only. Such park districts may, by ordinance, regulate, restrain and control the speed of travel upon the same, and in all things may regulate, restrain and control the use of said pleasure driveways and parks by the public or individuals, and may exclude therefrom funeral processions or anything other than pleasure vehicles; provided, that any and all roads, streets, boulevards or parks lying wholly or in part within the corporate limits of any city, town or village situated within any park district shall first, from and after the organization of such district, by ordinance of such city, town or village be turned over and placed under the control of such park district and accepted, by ordinance, by such district." Ill. Rev. Stat. 1983, ch. 105, par. 8—7.

The interrelationship of these sections requires an examination of the history of the Code. This is set forth in Hoff, *History of the Park District Code* (Ill. Ann. Stat. ch. 105, pages XIII-XIX (Smith-Hurd 1952)). From this it will be seen that the District was organized in 1900 as "The Pleasure Driveway and Park District of Springfield" pursuant to "An Act to provide for the creation of pleasure driveway and park districts" approved June 19, 1893. Hoff also notes sections 1—2(a) and 1—2(b) of the Code (Ill. Rev. Stat. 1983, ch. 105, pars. 1—2(a), 1—2(b)) which provide:

"(a) It is the intent of this codification that from and after its effective date, all existing park districts heretofore organized, together with all districts hereafter organized under this code, shall have identical powers, duties and purposes except for those instances where specific powers, duties or forms of organization are expressly conferred upon or prescribed for Submerged Land Park District, Pleasure Driveway and Park Districts or Township Park Districts, as in this code provided by specific designation.

(b) Construction. The provisions of this code, so far as they

are the same or substantially the same as those of any prior statute, shall be construed as a continuation of such prior provisions and not as a new enactment."

It follows from these actions that the district possesses both the general powers conferred under section 8—1 and the special power conferred under section 8—7. The latter derives from the Act of 1893 under which the district was organized.

■ Under the plain language of section 8—1(d), the district is authorized to regulate generally all traffic on its roadways. Under section 8—7 the district may designate certain roadways as pleasure driveways and may exclude therefrom "funeral processions or anything other than pleasure vehicles." Since both statutes are concerned with the same subject matter, *i.e.*, regulation of traffic in parklands, under a familiar principle of law they should be construed *in pari materia*. We therefore do not agree with the defendants that section 8—7 operates as a limitation on section 8—1(d).

■ Nor do we agree with the interpretation of the trial court that section 8—7 applies only to roads outside the boundaries of the parks. It is altogether possible under the language of section 8—7 that certain roads within a park could be designated as a pleasure driveway. However, the record in the instant case is devoid of any indication as to whether the roadways upon which defendants were arrested were, or were not, so designated.

Assuming, *arguendo*, that such a designation had been made, it would still not follow that defendants violated section 8—7. That section allows a park district to prohibit anything other than "pleasure vehicles." That term is apparently not one of art and hence should be given its ordinary meaning.

In our opinion a pleasure vehicle is one used for other than business purposes. "Vehicle" is a broad term. Under the Illinois Vehicle Code it is defined as:

"Every device, in, upon or by which any person or property is or may be transported or drawn upon a highway, except devices moved by human power, devices used exclusively upon stationary rails or tracks and snowmobiles as defined in the Snowmobile Registration and Safety Act." Ill. Rev. Stat. 1983, ch. 95½, par. 1—217.

■ Thus, a motorcycle not being used for business purposes is a pleasure vehicle within the meaning of section 8—7, and the district could not prohibit a motorcycle on a pleasure driveway. Defendant Buckley testified at the motion to dismiss that he was taking a pleasure drive at the time he was arrested.

■ The ordinance, then, cannot be justified under section 8—7. If it is to be upheld, it must be under section 8—1(d). We find that the ordinance sweeps too broadly and is an unreasonable and arbitrary classification which unduly discriminates against motorcycles on park driveways.

■ The general principles governing the validity of ordinances are well known. A unit of local government may regulate, restrain or prohibit that which is harmful to the public welfare even though the prohibition may interfere with personal liberty. (*Chicago National League Ball Club v. Thompson* (1985), 108 Ill. 2d 357, 483 N.E.2d 1245.) Where no suspect classifications or fundamental rights are implicated, an ordinance may be upheld if it bears a rational relationship to a legitimate governmental interest, and there is a presumption in favor of the validity of the ordinance. The party challenging it bears the burden of showing that it is unreasonable.

■ Generally speaking, a law which classifies motorcycles differently from other vehicles has a reasonable basis. (*People v. Fries* (1969), 42 Ill. 2d 446, 250 N.E.2d 149.) However, as *Fries* demonstrates, such classification must bear a rational relationship to the public interest. In that case the court struck down the motorcycle helmet law as involving only personal safety and therefore beyond the police powers of the legislature.

■ In this case, the district relies upon evidence concerning the off-road operation of motorcycles prior to the initial passage of the ordinance in 1966. Such operation damaged park grounds, including putting greens, and assertedly endangered children playing in the area.

It is clear that the motorcycle prohibition is designed primarily to prevent the off-road operation of motorcycles in the parks. Defendants presented evidence that since initial passage of the ordinance, the sale of two-cycle motorcycles which were previously used for both street and off-road operation have been outlawed by the Federal government. Further testimony indicated that the large street machines such as defendants were operating are unsuited to off-road use.

The district has a legitimate interest in preventing the off-road operation of motor vehicles in the parks. However, ordinance 209-83 addresses this problem by restricting the operation of all vehicles to park drives.

The assistant director of parks and recreation for the district testified that fences and cables had been installed around the driveways in Bunn Park to prevent off-road use of motorcycles.

There was also some evidence that prior to the passage of ordinance 209-83, motorcyclists would race over park drives and could

elude capture by cutting across park grounds. However, defendants presented the testimony of Lieutenant Mark A. Harris, supervisor of traffic services for the Springfield police department. Harris stated that, based upon his review of accident reports and traffic citations in Springfield, motorcyclists had no greater propensity than other motorists to become involved in accidents or to commit traffic offenses. The district has also prohibited by ordinance traveling in excess of posted speed limits.

We find persuasive the case of *Great Lakes Motorcycle Dealers Association v. City of Detroit* (1972), 38 Mich. App. 564, 196 N.W.2d 787, granting declaratory judgment and injunctive relief against the erection and enforcement of signs prohibiting the operation of two-wheeled motor vehicles on designated streets in the city of Detroit. The court found that the city had a legitimate interest in reducing the excessive noise and speed of motorcycles on the designated streets but held that a blanket exclusion of motorcycles from those streets swept too broadly in an effort to eliminate those deleterious activities. The court explained its rationale as follows:

"Since the problems of excessive speed and noise are not problems which relate solely to the nature and manner of operation of motorcycles it is unreasonable and arbitrary to deny the use of the public streets to motorcycles, and yet, allow automobiles to continue to use those streets. The proper solution to the problems of excessive speed and noise is the enforcement of the speed and noise laws and ordinances." 38 Mich. App. 564, 567, 196 N.W.2d 787, 788.

Similarly, in the instant case, it appears that the problems relating to the off-road use of motorcycles and speeding can be remedied by enforcement of the ordinance sections prohibiting such activity by any vehicle. The motorcycle prohibition restricts access to park facilities based solely upon the possibility that motorcyclists might leave the driveways or commit other offenses. It appears from the record that some of the parks involved contain only a short driveway to parking lots within the parks. There was no evidence that motorcyclists had ever injured children or other pedestrians within the parks. Further, virtually all of the evidence concerning recent off-road operation of motorcycles involved parks which have no driveways or road systems. It therefore appears that the prohibition sweeps too broadly and arbitrarily discriminates against motorcyclists who would otherwise operate their vehicles in compliance with regulations prohibiting speeding and off-road operation.

For these reasons, we find that ordinance 209-83 of the Spring-

field park district is invalid under section 8—1(d) of the Code as being an unreasonable and unnecessary exercise of the power therein conferred.

The judgment of the circuit court of Sangamon County is therefore reversed and the defendants' fines are ordered refunded to them.

Reversed.

MORTHLAND, J., concurs.

JUSTICE GREEN, dissenting:

I agree with the majority that the ordinance here is valid unless it (1) fails to meet the requirements of section 8—1(d) of the Park District Code, or (2) violates constitutional provisions for equal protection and against special legislation. The question of reasonableness is at the heart of all of those considerations. I do not agree with the conclusion of the majority "that the ordinance sweeps too broadly and is an unreasonable and arbitrary classification which unduly discriminates against motorcycles on park driveways."

The majority commendably recognizes that the language of the supreme court in *Fries* must be considered. It stated:

"The classification of motorcyclists separately from operators of other vehicles has a reasonable basis. *The differences are evident and need no elucidation at this point.* Furthermore, the statute in question applies in exactly the same manner to all persons riding on motorcycles. We find that the statutory classification is reasonable and does not violate the equal-protection clause of the fourteenth amendment to the Federal constitution." (Emphasis added.) (*People v. Fries* (1969), 42 Ill. 2d 446, 448, 250 N.E.2d 149, 150.)

The court then determined that the headgear requirement involved only personal safety and was thus beyond the police power of the State and thus deprived motorcyclists of due process. Considerations of merely personal safety are not involved here.

As stated by the majority, the testimony of the former park district police chief was that most of the problem from cyclists operating their vehicles off-the-road occurred in the 1960's. However, he did not testify that the problem was entirely eliminated. While Lieutenant Harris did testify that police records in Springfield did not indicate that motorcyclists had any greater propensity than other motorists to be in accidents or to commit traffic offenses, the trial court was not required to give substantial weight to such a survey. The classifica-

tions involved here are not suspect ones and they need not be scrutinized strictly. The supreme court has recognized that there are "evident differences" between the operation of motorcycles and those of other vehicles. The park district commissioners could reasonably have concluded that motorcycles on the driveways of the parks impaired the use and enjoyment of the parks by the public and properly prohibited their use.

The purpose of park districts is "for the recreation, health and benefit of the general public." (*Lincoln Park Traps v. Chicago Park District* (1944), 323 Ill. App. 107, 112, 55 N.E.2d 173, 175.) The purpose of a city street "is to afford a way for traffic." (*People ex rel. Herman Armanetti, Inc. v. City of Chicago* (1953), 415 Ill. 165, 168, 112 N.E.2d 616, 617.) Thus, that which might be a justifiable restriction or prohibition upon the use of park driveways could well be a totally arbitrary and unreasonable restriction or prohibition of the use of city streets. For example, a total closing of park driveways late at night would be reasonable, while a similar restriction or use of city streets would be totally arbitrary. A park district does not have a primary responsibility for affording "a way for traffic." Accordingly, I do not consider *Great Lakes Motorcycle Dealers Association* to be analogous to the instant situation even if it be considered good law as to the regulation of city streets.

I would affirm the convictions and fines.