No. 2--95--1397                              

_________________________________________________________________

                                  IN THE

                        APPELLATE COURT OF ILLINOIS

                              SECOND DISTRICT

_________________________________________________________________

ALBERT STEIER, JR., WILLIAM   )  Appeal from the Circuit

RUBY and JAMES O. TULLY,      )  Court of Kane County.

                              )

     Plaintiffs-Appellants,   )

                              )  No.  93--MR--414

v.                            )

                              )

BATAVIA PARK DISTRICT,        )  Honorable

                              )  R. Peter Grometer,

     Defendant-Appellee.      )  Judge, Presiding.

_____________________________________________________________

     PRESIDING JUSTICE McLAREN delivered the opinion of the

court:

     Plaintiffs, Albert J. Steier, Jr., William G. Ruby, and James

D. Tully, appeal the trial court's order denying both their motion

for summary judgment and objections to affidavits filed by

defendant, the Batavia Park District (park district), and granting

the defendant's cross-motion for summary judgment declaring valid

the defendant's "Amended Ordinance Limiting the Use of Jet Skis"

(Ordinance) (see Batavia Park District Amended Ordinance Limiting

the Use of Jet Skis, Ordinance No. 101 (eff. July 18, 1989)).  We

reverse.

     Initially, we note "Jet Ski" is a registered trademark of a

particular manufacturer's brand of "personal watercraft." 

Therefore, to avoid contributing to the dilution of a registered

trademark, we will use the term "personal watercraft." 

     The defendant is an Illinois municipal corporation organized

under the authority of the Park District Code (Code) (see 70 ILCS

1205/1--1 et seq. (West 1994)).  The defendant has jurisdiction

over the portion of the Fox River referred to by the parties as the

"Batavia section."  Both parties agree the Batavia section lends

itself to various recreational uses including boating.  On April 7,

1975, the defendant applied to the Army Corps of Engineers (Corps)

for a permit to build a boat launch on the Fox River.  The Corps

issued defendant a building permit.  This permit included

provisions prohibiting the defendant from (1) infringing on any

federal, state, or local law or regulation; (2) preventing the

"full and free use by the public" of the navigable waters of the

Fox River (see 70 ILCS 1205/11.1--3(f) (West 1994)); and (3)

unreasonably interfering with navigation by the existence or use of

the launch.  Subsequently, the defendant built the launch.

     In 1987, a number of Batavia residents began complaining about

personal watercraft and the manner in which they were being

operated in the Batavia section.  Batavia residents complained

personal watercraft produced excessive noise, tended to congregate

in the Batavia section of the river, caused excessive wakes, and

disrupted canoeing and fishing.  In addition, Batavia residents

complained personal watercraft users travelled at up to 40 miles

per hour, circled boats, cut in front of canoeists, jumped out of

the water, and performed figure eights and sharp turns.  Further,

residents complained that they had difficulty hearing each other

speak over the noise of the personal watercraft.  In response to

the complaints, the defendant park district enacted the following

ordinance to address these complaints:

     "It shall be unlawful for any person to use, or attempt

     to use, the Park District Launch for the purpose of

     launching or removing jet skis [personal watercraft] on

     or from the Fox River, except for the following times and

     only when the Park District Launch is opened generally to

     the public:

          Wednesday      1 p.m. to 9 P.M.

          Saturdays      Noon to 5 P.M."

     On September 21, 1993, the plaintiffs filed a complaint

seeking a declaratory judgment that the Ordinance was "void and of

no effect."  The trial court granted the defendant's motion to

dismiss two of the original plaintiffs, Fox Valley Personal Water

Craft Club and the National Marine Manufacturers, for lack of

standing.  We note the defendant did not raise an objection to the

standing of the present plaintiffs, Steier, Ruby, and Tully.  In

addition, the trial court denied the defendant's motion to dismiss

the complaint.  The parties then filed cross-motions for summary

judgment.  The parties agreed no genuine issue of material fact

existed and the trial court should decide the matter based on the

evidence submitted to date which included depositions, affidavits,

and other exhibits.

     After determining the evidence presented no genuine issue of

material fact, the court found: (1) the Batavia section is a

"navigable highway"; (2) the defendant has the authority to operate

and regulate the launch under the Code; (3) no federal law 

prohibits the restrictions contained in the Ordinance; and (4) the

Ordinance neither exceeds the defendant's authority under the Code,

nor is it an unreasonable restriction on navigation of the Batavia

section.  Therefore, the trial court granted the defendant's cross-

motion for summary judgment.  This appeal followed.

     On appeal, the plaintiffs essentially argue: (1) the defendant

lacked authority to enact the Ordinance; (2) the Ordinance violates

the commerce clause of the United States Constitution (U.S. Const.,

art. I, §8, cl. 3) because it prohibits access to a navigable

waterway; (3) the Ordinance violates Illinois law because it is

unreasonable and arbitrary; and (4) the affidavits submitted in

support of the reasonableness of the Ordinance do not comply with

Supreme Court Rule 191 (see 145 Ill. 2d R. 191). 

     Initially, we must address the defendant's contention that the

plaintiffs lack standing to challenge the Ordinance.  We agree with

the plaintiffs that this issue is waived because the defendant

failed to raise it prior to this appeal.  As an affirmative

defense, standing must be raised within the time for pleading or

the issue is waived on appeal.  In re Marriage of Schlam, 271 Ill.

App. 3d 788, 796 (1995), citing 735 ILCS 5/2--619(a)(9) (West

1994).  We hold that, because defendant failed to contest

plaintiffs' standing when challenging the standing of the plaintiff

organizations, the issue is waived.  We will, therefore, address

the merits.

     Summary judgment is proper where no genuine issue of material

fact exists and the question before the court is solely a matter of

law.  735 ILCS 5/2--1005(c) (West 1994); Lake County Public

Building Comm'n v. City of Waukegan, 273 Ill. App. 3d 15, 18

(1995).  On appeal, we must determine whether the trial court

correctly found that there were no genuine issues of material fact

and, if not, whether the trial court correctly entered judgment as

a matter of law.  Lake County, 273 Ill. App. 3d at 18.  We review

the trial court's order de novo.  Lake County, 273 Ill. App. 3d at

18.  

     The plaintiffs argue the trial court erroneously found the

defendant had the authority to enact the Ordinance under the Code. 

The plaintiffs urge us to strictly construe authorizing legislation

against the defendant because the defendant is a nonhome rule

entity.  Accordingly, the plaintiffs claim the ordinance violates

the Illinois and federal policy of the full and free use by the

public of all navigable waters.  The defendant acknowledges it is

a nonhome rule entity.  However, the defendant argues section 11.1-

-3(f) of the Code provided the power to enact the Ordinance at

issue.  See 70 ILCS 1205/11.1--3(f) (West 1994).

     It is well settled that a park district is a nonhome rule

municipal entity (Ill. Const. 1970, art. VII, §8; Springfield Park

District v. Buckley, 140 Ill. App. 3d 524, 527 (1986)) and, thus,

has no inherent power.  Ross v. City of Geneva, 71 Ill. 2d 27, 31

(1978).  Instead, a park district has only the powers delegated to

it by the legislature.  Ross, 71 Ill. 2d at 31; Springfield Park

District, 140 Ill. App. 3d at 527.  Moreover, statutes which grant

power to a nonhome rule entity are construed strictly against the

entity which claims the right to exercise the power.  Ross, 71 Ill.

2d at 31; Village of Bolingbrook v. Citizens Utilities Co., 267

Ill. App. 3d 358, 359 (1994).

     Section 11.1--3(f) of the Code authorizes park districts:

          "To license, regulate, and control the use and operation

     *** of all water-borne vessels in the harbor and within 1000

     feet of the outer limits of the harbor, or otherwise within

     the jurisdiction of the park district, except that such park

     district shall not forbid the full and free use by the public

     of all navigable waters, as provided by Federal law."  70 ILCS

     1205/11.1--3(f) (West 1994).

The Code defines a harbor as follows:

          "The term 'harbor', as used in this article includes

     harbors, marinas, slips, docks, piers, breakwaters, and all

     buildings, structures, facilities, connections, equipment,

     parking areas and all other improvements for use in connection

     therewith."  70 ILCS 1205/11.1--1 (West 1994).

After reviewing the record, we find no evidence to support the

defendant's contention that section 11.1--3(f) of the Code

authorized the defendant to enact the Ordinance at issue.  Nothing

in the record supports the defendant's position that the Batavia-

Fox River launch is a "harbor" within the meaning of the Code. 

Because there is no evidence that the Batavia section of the Fox

River is a harbor, section 11.1--3(f) does not grant the defendant

the power to "regulate[] and control" the use of the launch.  70

ILCS 1205/11.1--3(f) (West 1994).  

     In addition, the plaintiffs argue section 11.1--3(f) did not

provide the defendant with the power to enact the Ordinance because

the Ordinance prohibits "the full and free use by the public of all

navigable waters, as provided by Federal law."  70 ILCS 1205/11.1--

3(f) (West 1994).  The defendant argues that the Ordinance is a

reasonable regulation of a navigable water and thus does not

violate federal law.  We agree with the plaintiffs.

     It is well established that under the commerce clause of the

United States Constitution (U.S. Const., art. I, §8, cl. 3) the

federal government has the power to regulate navigable waters. 

Kaiser Aetna v. United States, 444 U.S. 164, 173-74, 62 L. Ed. 2d

332, 341-43, 100 S. Ct. 383, 389-90 (1979); City of Chicago v. Law,

144 Ill. 569, 578-79 (1893).  Accordingly, the United States

Congress enacted section 10 of the Rivers and Harbors Appropriation

Act of 1899 (Rivers and Harbors Act) which provides:

          "[I]t  shall not be lawful to build or commence the

     building of any *** [structure] in any *** navigable river ***

     except on plans recommended by the Chief of Engineers and

     authorized by the Secretary of the Army."  33 U.S.C. §403

     (1994).

Thus, a municipality may not build any structure in a navigable

river without permission from the Corps.   33 U.S.C. §403 (1994);

see City of Chicago, 144 Ill. at 579-80.  In addition, the Corps

may place certain conditions on the issuance of a permit.  United

States v. Alaska, 503 U.S. 569, 590-91, 118 L. Ed. 2d 222, 241, 112

S. Ct. 1606, 1618 (1992).

     In the instant case, the Corps issued a permit pursuant to

section 10 of the Rivers and Harbors Act (33 U.S.C. §403 (1994)),

allowing the defendant to build the launch.  However, the permit

placed the following conditions on the defendant:

          "That no attempt shall be made by the permittee to

     prevent the full and free use by the public of all navigable

     waters at or adjacent to the [launch].

                                   * * *

          That there shall be no unreasonable interference with

     navigation by the existence or use of the [launch]."

     After reviewing the record, we determine that the Ordinance

violates the permit granted by the Corps.  By prohibiting personal

watercraft from using the launch 5½ days of the week, the defendant

has essentially "prevent[ed] the full and free use by the public"

of the Fox River and unreasonably interfered with navigation. 

Therefore, the ordinance violates the permit issued by the Corps. 

Thus, we determine that the defendant lacked the authority to enact

the Ordinance.

     The case at bar is similar to Buckley v. City of Redding, 66

F.3d 188 (1995).  In Buckley, the United States Court of Appeals

for the Ninth Circuit recognized a federal right of access for

personal watercraft to navigable bodies of water.  The court found

personal watercraft could not be prevented from accessing and using

a particular navigable waterway from a boat launch facility. 

Buckley, 66 F.3d at 193.  In Buckley, the right of access

originated in the Federal Aid in Sport Fish Restoration Act (Fish

Act) (16 U.S.C. §§777 through 777k (1995)).  Because the municipal

defendant in Buckley accepted funds provided under the Fish Act to

build a boat launch, the defendant was contractually obliged to

accept the conditions set forth in the Fish Act's enabling

regulations.  Among these were a requirement that the defendant's

launch accommodate " 'power boats with common horsepower ratings' "

(emphasis omitted) (Buckley, 66 F.3d at 192, quoting 50 C.F.R.

§80.24 (1995)) classified by the United States Coast Guard. 

Because personal watercraft fall within the common horsepower

rating, the defendant could not restrict such craft.  Buckley, 66

F.3d at 192.

     The defendant distinguishes Buckley from the case at bar by

pointing out that the defendant did not build the launch with funds

provided under the Fish Act.  We find this distinction immaterial

because in the instant case the defendant built the launch with

permission from the Army Corps of Engineers.  Accordingly, the

defendant in the instant case must comply with the conditions

placed on it by the Corps, just as the defendant in Buckley had to

comply with the Fish Act (16 U.S.C. §§777 through 777k (1995)).  We

recognize that the condition at issue in the instant case differs

from the condition at issue in Buckley.  Nevertheless, we are

persuaded by the court's reasoning that a municipal defendant is

contractually obliged to accept conditions set forth in an enabling

document.

     We recognize the defendant has a legitimate interest in

preventing noise, wake, and wildlife problems.  However, the

Ordinance unreasonably singles out one type of watercraft in an

effort to eliminate the deleterious effects that excessive noise

and speed create.  The problems of excessive noise and speed are

not solely related to personal watercraft.  We believe it is

unreasonable to deny the use of the Batavia launch to users of

personal watercraft and continue to allow all other watercraft of

the same class (see United States Coast Guard Regulation 46 C.F.R.

§24.10--17 (1994)) to use the launch.  Instead of singling out one

type of watercraft, the defendant should enact appropriate

ordinances which apply to all watercraft.  See Springfield Park

District, 140 Ill. App. 3d at 531; Great Lakes Motorcycle Dealers

Ass'n v. City of Detroit, 38 Mich. App. 564, 196 N.W.2d 787 (1972). 

The defendant has the right to regulate, but a regulation applies

equally to all.  Because the Ordinance singles out one type of

watercraft, it is unreasonable and thus violates the permit issued

by the Corps.

     The defendant argues that it has the authority to enact the

Ordinance pursuant to its police powers.  We reject this argument. 

We recognize that section 11--4 of the Code grants the defendant

authority to "take charge of, control and police" its section of

the Fox River.  70 ILCS 1205/11--4 (West 1994).  However, section

11--5 of the Code limits the defendant's power in that regard.

Section 11--5 provides that the authority granted in section 11--4

does not authorize the defendant to "interfere with the navigation

of any navigable body of water or to shut off the access to any

public dock or landing thereon."  70 ILCS 1205/11--5 (West 1994). 

By prohibiting personal watercraft from using the launch 5½ days of

the week, the defendant has essentially "shut off" access.  Thus,

the defendant has exceeded its authority granted by section 11--4

of the Code (70 ILCS 1205/11--4 (West 1994)), and its argument

fails.

     Because we find the Ordinance invalid on the grounds stated

above, we need not address the plaintiffs' more specific

contentions that the ordinance violates: (1) "An Ordinance for the

Government of the Territory of the United States north-west of the

[R]iver Ohio" (Ordinance of 1787); (2) the "dormant" commerce

clause of the United States Constitution; and (3) Illinois'

prohibition against overly broad and arbitrary classifications.  In

addition, because the issue is moot, we need not address the

plaintiffs' argument that the affidavits submitted in support of

the ordinance do not comply with Supreme Court Rule 191 (see 145

Ill. 2d R. 191).    

     The judgment of the circuit court of Kane County is reversed.

     Reversed.

     GEIGER, J., concurs.

     JUSTICE HUTCHINSON dissenting:

     The majority's determination that defendant lacks the

authority under the Code to regulate the launch depends on the

construction of two provisions, section 11.1--3(f) and section

11.1--1.  I examine each as it relates to defendant's regulatory

authority.

     Section 11.1--3(f) expressly grants defendant the power to

"license, regulate, and control the use and operation *** of all

water-borne vessels"--and, therefore, personal watercraft--in two

situations.  70 ILCS 1205/11.1--3(f) (West 1994).  First, defendant

is authorized to regulate any water-borne vessel in a harbor or

within 1,000 feet of the outer limits of a harbor.  70 ILCS

1205/11.1--3(f) (West 1994).  The definition of harbor contains a

list of places or facilities included in the definition of a harbor

provided these places or facilities are used "in connection

therewith."  70 ILCS 1205/11.1--1 (West 1994).  Among the listed

places and facilities are "harbors."  Reading "harbor" as a term of

art referring exclusively to "a part of a body of water protected

and deep enough to furnish anchorage" (Webster's Ninth New

Collegiate Dictionary 552 (1990)), rather than as a general term

encompassing all the places and facilities set forth in section

11.1--1, yields the unworkable result that the term harbor as used

in the Code includes harbors used in connection with harbors. 

Hence, such a construction renders meaningless the second usage of

the term "harbor" in section 11.1--1.  Courts should avoid

construing a statute in a manner that reduces any element of the

legislation to mere surplusage.  See, e.g., Bonaguro v. County

Officers Electoral Board, 158 Ill. 2d 391, 397 (1994)(if possible,

when determining the legislature's intent, statutes should be

construed so each portion has meaning).

     The more reasoned construction is that the first usage of

"harbor" is a general term:  a heading for section 11.1--1.  Under

this general rubric falls each of the different places and

facilities that qualify as a "harbor."  The "in connection

therewith" language refers to improvements made to each place or

facility falling within a listed category (e.g., a dock built on a

harbor, or a ramp connecting two docks located on a river).  Under

this construction, defendant's launch is a "harbor" within the

general meaning section 11.1--1 gives to the term.  Therefore,

defendant has the authority to regulate the use of the launch.

     Second, defendant is authorized to regulate any water-borne

vessel "otherwise within the jurisdiction of the park district." 

70 ILCS 1205/11.1--3(f) (West 1994).  I would think it obvious that

a water-borne vessel introduced onto the Batavia section from

defendant's boat launch is within defendant's jurisdiction if for

no other reason than it must travel over defendant's property to

reach the Batavia section.  Again, therefore, I conclude that

section 11.1--3(f) expressly grants defendant the authority to

regulate the usage of their launch.

     My conclusion is amply supported by other provisions of the

Code dealing with the issue of park district regulatory authority. 

For example, the legislature has expressly provided that

defendant's general powers are not limited to those enumerated in

the Code.  See 70 ILCS 1205/11.1--3 (West 1994)(before listing the

general powers of park districts, the legislature used the phrase,

"its rights and powers include but are not limited to the

following").  The legislature has also provided broad police powers

over navigable waters.  See 70 ILCS 1205/11--4 (West 1994)(granting

park districts "[p]olice powers" to "take charge of, control and

police [an adjacent navigable] body of water and the land

thereunder").

     The majority asserts, "[b]ecause there is no evidence that the

Batavia section of the Fox River is a harbor, section 11.1--3(f)

does not grant the defendant the power to 'regulate[] and control'

the use of the launch."  Slip op. at 6, quoting 70 ILCS 1205/11.1--

3(f) (West 1994). To state such a proposition is to refute it.  I

would be surprised if the majority seriously meant to assert

defendant lacks the authority to close the launch to the public at

night, during periods of inclement weather, or on the basis of

other safety concerns--provided, of course, the majority concurred

in defendant's judgment concerning what constituted prudent public

policy.  On the contrary, the legislature has expressly granted

defendant the authority to regulate the use of navigable waterways

and park district structures used to access such waterways.

     Notwithstanding their holding that defendant lacked the

authority to promulgate the regulation under the Code, the majority

reaches the federal issue of public use of navigable waterways. 

The majority holds (1) that the Ordinance prevents the full and

free public use of the Fox River and unreasonably interferes with

navigation; and (2) there is a federal right to access for personal

watercraft to navigable bodies of water.  It is a long-standing

maxim that appellate courts need only rule on those issues

necessary to the decision.  See McDaniel v. Bullard, 34 Ill. 2d

487, 494 (1966)(declining to reach constitutional question where

issue may be resolved via statutory construction); see also R.

Aldisert, Opinion Writing 87 (1990).  Therefore, if defendant truly

lacked the authority to regulate the use of the launch, there would

be no reason to reach these federal issues.  Hence, I infer the

majority is cautious in its statutory analysis of the Code and

seeks to buttress its judgment by relying on federal law.  I

discuss each of the majority's holdings under federal law in turn.

     In support of its first holding, the majority neither cites

authority nor engages in any analysis beyond naked assertion.  The

quotation from the permit issued by the Corps fails to provide

substantive justification for the majority's holding.  The permit

defines neither "full and free use" nor "unreasonable

interference."  Unfortunately, neither does the majority.  The sum

total of its analysis is "[b]y prohibiting personal watercraft from

using the launch 5½ days of the week, *** defendant has essentially

'prevent[ed] the full and free use by the public' of the Fox River

and unreasonably interfered with navigation."  Slip op. at 8.

     There are several reasons to avoid this result.  A permit

containing the identical "full and free use" condition has been

interpreted to prohibit obstruction to only the navigable body of

water and not a mooring structure built on the water.  See First

National Bank v. SFIC Gulf Coast Properties, Inc., No. 91--3781,

slip op. at __ (E.D. La. February 10, 1993).  Additionally, in the

absence of contrary congressional action, a state's regulatory

authority over the use of and access to its navigable bodies of

water is plenary.  Economy Light & Power Co. v. United States, 256

U.S. 113, 121, 65 L. Ed. 847, 854, 41 S. Ct. 409, 412 (1921). 

Consequently, the "full and free use" language does not imply a

prohibition on all state and municipal regulation of the use of and

access to such waters.  See, e.g., Escanaba & Lake Michigan

Transportation Co. v. City of Chicago, 107 U.S. 678, 689, 27 L. Ed.

442, 447, 2 S. Ct. 185, 194 (1882)(upholding a municipal

restriction of commercial navigation of the Chicago River based

upon the "navigable waters *** shall be common highways *** and

forever free" language of the Northwest Territory Ordinance of

1787).  It should also be noted that the Corps' inclusion of the

"full and free use" condition in the permit does not express a

particularized concern that municipal regulation of boat launches

poses a threat to the use of navigable waters.  See Boone v. United

States, 725 F. Supp. 1509, 1523 (1989), aff'd, 944 F.2d 1489

(1991)(Corps acknowledges "full and free use" condition was

included in virtually all permits it issued).  Furthermore, the

plain and inescapable construction of the phrase "unreasonable

interference" permits a municipality to reasonably interfere with

navigation.  Finally, at oral argument an attorney for plaintiffs

conceded his clients use their personal watercraft for

entertainment not transportation purposes.

     In light of the foregoing, I cannot agree the Ordinance runs

afoul of the conditions set forth in the permit.  The Ordinance

does not prevent navigation of the Batavia section by personal

watercraft.  On the contrary, the Ordinance (1) allows all boats--

including personal watercraft--to navigate the Batavia section

seven days a week; (2) allows personal watercraft aficionados to

use the launch to access the Batavia section 1½ days a week; (3)

limits the use of the launch for a discrete group of boaters--those

piloting personal watercraft--not all boaters; and (4) is based

upon the factual finding of a legislative body--the Batavia Park

District--that the use of personal watercraft gives rise to public

policy concerns not implicated by the use of other watercraft.  I

would find that the Ordinance neither prevents the full and free

use of the Batavia section nor unreasonably interferes with

navigation.

     Furthermore, I believe that the majority's second holding

under federal law is based on an unequivocally inapplicable

precedent.  As the majority concedes, Buckley involved a condition

set forth in the enabling regulations to a federal statute not at

issue in the present case.  The so-called federal right recognized

by the majority was dependent on the contractual obligations

present in Buckley arising from the defendant's acceptance of funds

under the Fish Act; because the defendant used such appropriations

to build a launch, it was obligated to accommodate " 'power boats

with common horsepower ratings.' "  (Emphasis omitted.)  Buckley,

66 F.3d at 192, quoting 50 C.F.R. §80.24 (1995).  In the present

case, the Fish Act is not at issue.  There is no generalized

federal right of access for personal watercraft via municipal boat

launch facilities.

     The true rationale for the majority's ruling appears to be

this:  they disagree with the policy judgment exercised by

defendant.  The majority repeatedly asserts defendant has

"unreasonably" singled out one type of watercraft.  The majority

also states "a regulation applies equally to all."  (Emphasis

added.)  Slip op. at 10.  It is a quintessentially legislative

function to classify--and therefore differentiate--similarly

situated but distinguishable individuals.  Provided "a law neither

burdens a fundamental right nor targets a suspect class, we will

uphold the legislative classification so long as it bears a

rational relation to some legitimate end."  Romer v. Evans, 517

U.S. ___, ___, 134 L. Ed. 2d 855, 865, 116 S. Ct. 1620, 1627

(1996); see also Opyt's Amoco, Inc. v. Village of South Holland,

149 Ill. 2d 265, 270 (1992)(if a statute prohibits certain

activities, such activities must have a causal relationship to the

harm the legislature seeks to guard against or else the exercise of

the police power is void).  The users of personal watercraft are

not a suspect class and the piloting of personal watercraft for

entertainment purposes is not a fundamental right.  The Ordinance

is rationally related to legitimate ends, and there is a causal

relationship between the activity regulated and the harms

identified with that activity.  At this point the judicial inquiry

should end.  I believe it is improper for a court to weigh the

wisdom of a legislative body's choice to adopt one rational and

reasonable policy option rather than another.

     I respectfully dissent.