# THE CITY OF CHICAGO

## *v.*

## ROBERT LAW *et al.*

### *Filed at Ottawa, March 31, 1893.*

1. SPECIAL ASSESSMENTS — *power of city to raise money thereby.* The power of taxation by special assessment can not be exercised by a city or any other corporate authority unless the power has been expressly and clearly conferred by the legislature. In no case can a city resort to the taxation of property by special assessment unless the power has been clearly conferred.

2. The first section of article 5 of the act relating to cities and villages contains ninety-six distinct paragraphs specifying the different powers of the city council, but there is nothing in that article or any of its sections or clauses which confers authority to make a special assessment to raise money to enable the city to carry out any of these different powers.

3. SAME — *widening navigable river.* Under section 1 of article 9 of the same act, a city has the right to levy special assessments to pay for the opening, grading and paving streets and alleys, and to pay for the making of sidewalks, sewers and other like improvements; but it has not the right under that section to make a special assessment to pay for

the widening of a navigable river of the United States which is under the control of the general government. Such an improvement has none of the elements of a local improvement, such as incorporated cities and villages have been in the habit of making by special assessment, but is one in which the general public have an interest.

4. The grant of power to cities and villages to deepen, widen, dock, cover, wall, alter or change the channel of water-courses, does not authorize them to resort to special assessment to raise money to put such power in execution.

5. When Congress has taken no action on the subject, the city, under the grant of legislative power, will have the right to make such improvement in a navigable river within its limits in aid of navigation as in its judgment may be required; but after Congress has passed an act on the subject, and has thus assumed jurisdiction over the subject, the city can only act in conformity to the act of Congress.

6. So when the act of Congress has declared it unlawful for the city of Chicago to make any improvement of the Chicago river until the plan of its work is submitted to and approved by the secretary of war, the city will have no power to improve that river, except by procuring the approval of the secretary of war.

7. SAME — by whom may be challenged. Where an improvement is ordered which is manifestly one not pertaining to the locality, but one designed to be a great benefit to the country at large, an assessment therefor may be challenged by the property owner whose property may be assessed, and the court may refuse to confirm such assessment and dismiss the proceeding.

8. COMMERCE — power of Congress to regulate. Under the constitution of the United States Congress is clothed with power to regulate commerce, and, as commerce includes navigation, the improvement of harbors and navigable waters is included within the power.

APPEAL from the Circuit Court of Cook county; the Hon. S. P. McCONNELL, Judge, presiding.

Mr. CHARLES S. GILBERT and Mr. JOHN S. MILLER, for the appellant:

The ordinance provides for a local improvement within the meaning of section 1, article 9 of the act of 1872, relating to cities and villages.

Par. 30, sec. 1, article 5, act of 1872, supra, provides that the common council of cities and villages shall have power to deepen, widen, dock, cover, wall, alter or change the channel

of water-courses.  See, also, *Elston* v. *Chicago*, 40 Ill. 514; *Wright* v. *Chicago*, 20 id. 253.

Section 1, article 9, of same act, provides that the corporate authorities shall have power to make local improvements by special assessment.

The statute does not define what shall be considered a local improvement.  That question is left solely to the determination of the city council.  Its decision as to the utility of an improvement, and whether it is to be treated as a local improvement for the purpose of raising funds by special assessment to pay for it, is final, in the absence of fraud.  *L. & N. R. R. Co. et al.* v. *The City of East St. Louis*, 134 Ill. 656, citing *Fagan et al.* v. *City of Chicago*, 84 id. 227.

The River and Harbor act of September 19, 1890, does not deprive the city of the power to pass the ordinance and make the improvement.  See Act of Congress, sec. 7; *Hyde Park* v. *Borden*, 94 Ill. 26; *Sands* v. *Manistee River Co.*, 123 U. S. 295; *County of Mobile* v. *Kimball*, 102 id. 691; *Escanaba Case*, 107 id. 683; *Nolton* v. *St. of Mo.*, 91 id. 275; *Gilman* v. *Philadelphia*, 3 Wall. 713; *Pound* v. *Turck*, 95 U. S. 459; *Cardwell* v. *American Bridge Co.*, 113 id. 205; *Hamilton* v. *Vicksburg, etc., R. R. Co.*, 119 id. 280; *Huse* v. *Glover*, 119 id. 543–546; *Brown* v. *Maryland*, 12 Wheat. 419; *Gibbon* v. *Ogden*, 9 id. 187; *The Genesee Chief*, 12 How. 443.

Messrs. WILSON, MOORE & McILVAINE, Messrs. MATZ & FISHER, for the appellees, and Messrs. WILLIAMS, HOLT & WHEELER, Messrs. UNDERWOOD & BUTLER, Messrs. HUTCHINSON & LUFF, Mr. WILLIAM M. JOHNSTON, Mr. STEPHEN D. FISHER, and Messrs. MASON BROTHERS, of counsel.

The proposed widening is not a "local improvement" within the meaning of the statute, and a special assessment proceeding will not lie for it.  *Wright* v. *Chicago*, 20 Ill. 254.

If the State has authorized the city to widen the Chicago river in the manner proposed, this right is subject to a condition imposed by the United States which has not been complied with.

The legislature has created another municipality with jurisdiction over the Chicago river, which supersedes that of the city.

Messrs. OSBORNE & LYNDE, for the Chi. & W. Ind. Ry. Co.:

The city has no power or authority to excavate or fill, or in any manner alter or modify the course, location, condition or capacity of the channel of the Chicago river, unless approved and authorized by the secretary of war. *County of Mobile* v. *Kimball,* 102 U. S. 697; *Gilman* v. *Philadelphia,* 3 Wall. 713; *Cardwell* v. *American River Bridge Co.,* 113 U. S. 205; *Miller* v. *Mayor,* 109 id. 385.

The court must hold that it was not the intention of the legislature to give to the Sanitary District and the city of Chicago a conflicting power and authority as to the improvement of the Chicago river; and that, in case of such conflict, the latter grant supersedes the prior. As analogous we refer to *State* v. *Clarke,* 20 N. J. L. 54; *State* v. *Trenton,* 36 id. 198; *South Chester Road,* 80 Pa. St. 370; *Gallagher* v. *Head,* 72 Iowa, 173.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

On the 18th of July, 1890, the city of Chicago filed its petition in the Circuit Court of Cook county for the purpose of widening the south branch of the Chicago river north and south of West Eighteenth street, by condemning therefor certain lots and parcels of ground lying and being in canal trustees' subdivision of west half (W. $\frac{1}{2}$) of section 21, township 39 north, range fourteen (14) east of the third P. M., and so much of the north-east quarter ($\frac{1}{4}$), as lies west of the south branch of Chicago river.

It appears from the record that a jury awarded some $80,000 for the land condemned, that commissioners were appointed to levy the special assessment, and that they have returned an assessment roll into court. This roll assesses less than $1000 upon the city to be paid by general taxation, and spreads the remaining $79,000 exclusively upon property fronting on the river and its slips, beginning a few blocks east of Eighteenth street and running west to the end of navigable water on both forks of the south branch.

The appellees, property owners whose property was assessed, appeared and filed objections to the confirmation of the assessment, and entered a motion to dismiss the petition, upon the ground that the petitioner had no power to make the improvement and the court is without jurisdiction to confirm the assessment therefor. In the argument filed by appellees their position in support of the motion is stated as follows:

1. That the legislature of Illinois has not granted to the city of Chicago the power to widen the Chicago river *by special assessment*, and that the proposed widening is not a "local improvement" within the meaning of the Special Assessment act, but is made for the benefit of navigation and of commerce, generally, and the cost thereof ought to be borne by the community at large, and not solely by the owners of river frontage.

2. That Congress has assumed exclusive jurisdiction over the Chicago river, and that even if the State had granted to the city the power to widen the river by special assessment, the national government has declared it *unlawful* to excavate or fill or in any manner to alter or modify its course, location, condition or capacity until the plans for the proposed work have been submitted to the secretary of war and have been by him approved ; that the city has no power to make the improvement except upon a condition precedent with which it has not complied.

3. That since the act which conferred upon the city such powers as it has, the legislature has delegated the control of

this stream and all works done upon it to the Sanitary District
of Chicago, which has, by appropriate action, assumed jurisdic-
tion over the Chicago river and the south branch thereof, for
the purpose of widening and improving the same to a capacity
of three hundred thousand cubic feet per minute, and that this
jurisdiction is now exclusive.

On the hearing of the motion it was admitted by the parties
that the Chicago river from its mouth, where it flows into
Lake Michigan, to, and at the point where said improvement
is proposed to be made, and both north and south thereof is,
and was when said ordinance was passed, a navigable stream,
and that the United States government, or the authorities
thereof, have never in any way improved or expended any
money upon the improvement of the Chicago river, except
near the mouth thereof and two miles and upward from the
improvement in question herein, and that the city of Chicago
has at different times, from year to year, expended divers large
sums of money in the improvement of said river, and that
said river has been greatly enlarged by the city of Chicago for
the convenience of its commerce; and it was further admitted,
for the purpose of this case only, that no application has been
made by or on behalf of the city of Chicago to the secretary
of war of the United States government to approve of or con-
sent to the proposed improvement, or any plans or specifica-
tions therefor, and that no such approval or consent has been
made or given.

It was further admitted by the parties hereto that the Sani-
tary District of Chicago was duly organized according to law·
and that it had properly and legally passed the following reso-
lutions :

"Resolutions of the Sanitary District of Chicago, passed
April 21, 1891.

*Resolved*, That this board hereby orders that the Sanitary
District of Chicago do forthwith enter upon, use, widen, deepen
and improve the Chicago river from its mouth at Lake Michi-

gan to the south branch thereof, and also the south branch thereof, together with the south and west fork thereof, so as to make the same a proper and sufficient supply channel for the main channel heretofore surveyed from the Chicago river to Joliet ; and, further, that the acting chief engineer be, and he is hereby, directed immediately to investigate and report upon the capacity of said river and its south branch and forks for that purpose, and also as to any changes that should be made therein; and that a copy of this resolution, certified by the clerk, be forthwith transmitted to the mayor and common council of the city of Chicago and the secretary of war of the United States, which resolution was by the said objectors offered in evidence."

Section 1, of article 9, of the act of 1872, relating to cities and villages, provides that the corporate authorities of cities and villages shall have power "to make local improvements by special assessment, or by special taxation, or both, of contiguous property, or general taxation or otherwise as they shall by ordinance prescribe."

Paragraph 30, of section 1, of article 5, act of 1872, *supra*, provides that the common council of cities and villages shall have power to deepen, widen, dock, cover, wall, alter or change the channel of water-courses.

Under these sections of the statute it is claimed that the city of Chicago had the power to make the special assessment in question for the purpose of raising money to pay the cost of widening the south branch of the Chicago river. Article 5, or rather the first section of the article, contains ninety-six distinct paragraphs specifying the different powers of the city council, including paragraph 30, *supra*, but we find nothing in the article or any of its sections or clauses which confers authority to make a special assessment to raise money to enable the city to carry out any of these different powers. The fact that the legislature has conferred the power on the city to deepen or widen a water-course or navigable river, does not

authorize the conclusion that a special assessment may be resorted to, to raise money to put that power into execution. The power of taxation by special assessment can not be exercised by a city or any other corporate authority, unless the power has been expressly and clearly conferred by the legislative department of the government. In no case can a city resort to the taxation of property by special assessment unless the power has been clearly conferred. In *Wright* v. *City of Chicago*, 20 Ill. 252, where authority was given by the charter to widen, straighten and deepen water-courses, but there being no provision for levying a special assessment for deepening, it was held that the city had no power to resort to that mode of raising money to pay for deepening the river. So far, therefore, as paragraph 30 is concerned, we do not think it confers any power on the city to resort to taxation by special assessment. Under the other section it is plain that the city has the undoubted right to make special assessments to pay for the opening, grading and paving of streets and alleys, and to pay for the making of sidewalks, sewers and other like municipal improvements, but whether the city, under that section of the statute, has a right to make a special assessment to pay for the widening of a navigable river within the city limits presents entirely a different question. The river is a navigable stream of the United States; it connects with Lake Michigan, and by means of the lake with the country at large; the Federal government has assumed jurisdiction over it, and expended money, as appears from the admitted facts, for its improvement; it is one of the channels over which the commerce of the country passes, and this improvement was instituted for the purpose of increasing its power as one of the navigable streams of the country. It was undertaken in the interest of the commerce of the country. Was it ever intended that a few land owners bordering on one of the navigable streams of the country should be compelled to pay for an entire improvement in a river, the object of which is to benefit the public at large rather than

the locality where the improvement is made? Here the contemplated improvement was one to widen the river in order that boats and vessels might pass up and down the river with greater facility — one calculated to increase the navigable qualities of the river; an enterprise wholly public in its nature. If one of the cities located on the banks of the Mississippi river should undertake to remove obstructions from that navigable stream of water, to enable boats to run up and down the river with greater facility, and pay for the improvement by special assessment on property fronting on the river, it would not, we apprehend, be contended that an assessment of that character could be sustained under the provisions of the statute above cited, and yet there is no substantial difference between the supposed case and the one under consideration. The proposed improvement has none of the elements of a local improvement, such as incorporated towns and cities have been in the habit of making by special assessment. The term, " local improvement," is one which has been recognized as applying in cities and incorporated towns to the opening, grading, paving and otherwise improving streets and alleys, making sidewalks, the construction of drains and sewers and other improvements of this character,— improvements designed to be of benefit to the locality where they are made. But the improvement here involved was of a different character. It was not ordered to benefit specially the locality, and thus local, but it was ordered to be made to benefit the public at large, and it was thus a national, rather than a local, improvement. It is true the statute contains no definition of a local improvement, and it may be regarded as a discretionary matter for the city to determine when and where it will make local improvements by special assessment, but when an improvement has been ordered which is manifestly one not pertaining to the locality, but an improvement designed to be a great benefit to the country at large, an assessment may be challenged by the property owner whose property may be assessed, and the court

37—144 ILL.

may refuse to confirm such an assessment and, as was done in this case, dismiss the petition. *City of Bloomington* v. *C. & A. R. R. Co.*, 134 Ill. 457, is somewhat in point. In that case it was attempted to build a railroad bridge as a local improvement. It was, among other things, there said : "No one will contend that power is conferred by the statute upon corporate authorities of cities to make improvements other than of a public nature and for the benefit of the corporation." *L. & N. R. R. Co.* v. *City of East St. Louis*, 134 Ill. 656, has been cited as an authority to sustain the assessment. That was a case, in its facts, where there could be no doubt that the improvement was a local improvement, within the meaning of the statute, as was held by the court, and what was said in that case must be confined to the facts presented by the record then under consideration.

We now come to the second question. On the 19th of September, 1890, Congress passed an act, the seventh section of which provides that it shall be unlawful to build any structure in any navigable waters of the United States, and to thereafter " excavate, or fill, or in any manner to alter or modify the course, location, condition or capacity of the channel" of any navigable waters of the United States, unless approved and authorized by the secretary of war.

Under the constitution of the United States, Congress is clothed with power to regulate commerce, and as commerce includes navigation, the improvement of harbors and navigable waters is embraced within the power. The power of the general government to control the improvement of navigable waters, and the extent to which the State might act was considered in *County of Mobile* v. *Kimball*, 102 U. S. 697. In the decision of the case it is, among other things, said : "As commerce embraces navigation, the improvement of harbors and bays along our coast, and of navigable waters within the States connecting within them, falls within the power.

The subjects upon which Congress can act under this power are of infinite variety. * * * Some of them are national in their character, and admit and require uniformity of regulation, affecting alike all the States; others are local or are mere aids to commerce, and can only be properly regulated by provisions adapted to their special circumstances and localities."

After holding that, as to the first class, Congress only has power to act, and, as to the other class, the States may act in the absence of action by Congress, it is further said:

"State action upon subjects can constitute no interference with the commercial power of Congress, for when that acts, State authority is superseded. Inaction of Congress upon these subjects of a local nature or operation, unlike its inaction upon matters affecting all the States and requiring uniformity of regulation, is not to be taken as a declaration that nothing shall be done with respect to them, but is rather to be deemed a declaration that for the time being, and until it sees fit to act, they may be regulated by State authority.

"The improvement of harbors and navigable rivers within the States falls within the last category of cases. The control of Congress over them is to insure freedom in their navigation so far as that is essential to the exercise of its commercial power. Such freedom is not encroached upon by the removal of obstructions to their navigability or by other legitimate improvement. The States have as full control over their purely internal commerce as Congress has over commerce among the several States and with foreign nations." See, also, 12 Howard, 311. Had Congress taken no action on the subject, the city of Chicago would have had the undoubted right to make such improvement in the river in aid of navigation as in its judgment was required; but after Congress had passed a law on the subject, and thus assumed jurisdiction over the subject, we think the city of Chicago could only act in conformity to the act of Congress, and as the act of Congress made it unlawful for the city to make the improvement until the plan of the

work was submitted to and approved by the secretary of war, the city had no power to make the improvement.

After the passage of the act of Congress the authority which the legislature had conferred upon the city to change the channel of the river was subject to a condition which the city was bound to observe before it was empowered to act.

But it is said that the United States can alone raise this question, and as the government has not complained, the property owner can not interpose an objection. We do not concur in this view. The question is one of power, and before the city is authorized to act it must have the approval of the secretary of war. We do not think the city had the power to make the special assessment, and as this disposes of the case, it will not be necessary to consume time in disposing of the third ground relied upon to defeat the assessment.

The judgment of the Circuit Court will be affirmed.

*Judgment affirmed.*