LAKE COUNTY PUBLIC BUILDING COMMISSION, Plaintiff-Appellant, v. THE CITY OF WAUKEGAN, Defendant-Appellee.

Second District No. 2—94—0710

Opinion filed June 20, 1995.

Rudolph F. Magna, Jr., of Magna & Hauser, of Gurnee, for appellant.

Robert J. Masini, of Diver, Grach, Quade & Masini, of Waukegan, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, the Lake County Public Building Commission (Commission), appeals an order of the circuit court of Lake County denying the Commission's motion for summary judgment and granting the summary judgment motion of defendant, the City of Waukegan (City). We affirm.

The facts giving rise to this appeal are not in dispute and may be summarized briefly. On October 15, 1984, the Waukegan city council adopted resolution number 84—R—132 which, *inter alia*, approved the Commission's choice of a site for construction of an overhead pedestrian walkway, known as a skywalk, connecting the Babcox Justice Center Building with the Courthouse Square in downtown Waukegan. The Commission proceeded to prepare for construction of the skywalk and received building plans and specifications for the project. The plans and specifications were formally approved by the Commission and were incorporated into the construction contract.

On or about October 28, 1992, the Commission entered into a contract with a contractor to construct the skywalk. The contract set the cost of construction at $1,489,000. In December 1992, the contractor applied for a City of Waukegan building permit by depositing the skywalk plans and specifications with the Waukegan Building Department. On December 21, 1992, the City issued a building permit

authorizing construction of the skywalk. The building permit stated that the permit fee was $15,100. Under the terms of the construction contract, the Commission was to be liable for the building permit fee.

The Commission refused to pay the permit fee and the parties entered into negotiations in an attempt to reach an agreement governing the construction of the skywalk as well as the Commission's other projects in Waukegan. No protocol, however, was reached. On July 6, 1993, following the Commission's refusal to pay the fee, the Waukegan city council passed a motion which directed City officers to collect the disputed permit fee or, if it was not paid, to order the skywalk construction halted by a "stop work order."

On July 9, 1993, following notice to the Commission, the City ordered cessation of the construction at the end of the day. On the same day, the Commission filed a one-count complaint seeking temporary, preliminary, and permanent injunctive relief to prevent the City from enforcing its permit fee against the Commission. Also on that day, the parties agreed that the Commission would deposit the disputed $15,100 permit fee with the circuit court and that, until final resolution of the issues, the City would not delay or halt the construction. An agreed order, entered July 9, 1993, reflects this arrangement.

The litigation proceeded and the Commission filed a two-count first amended complaint. Count I mirrored the original complaint, seeking injunctive relief; count II sought a declaratory judgment that Waukegan's building regulations, including the permit fee, were inapplicable to the Commission. Following the filing of the first amended complaint, the parties filed cross-motions for summary judgment. On April 20, 1994, the trial court entered a five-page written order denying the Commission's motion for summary judgment and granting summary judgment to the City. In its order, the trial court noted that the parties were in agreement that there were no genuine issues of material fact. The court also noted that the Commission conceded that the City had the authority to pass a building code and that the permit fee in the present case was reasonable. Thus, the trial court stated, the Commission challenged only the applicability of the regulations and fee to itself.

Following a discussion of relevant cases, the trial court granted summary judgment to the City, stating:

> "Therefore, since the regulation of the construction of buildings within a municipality is within the City's constitutional grant of power, since the PBC [Public Building Commission] has been given no explicit statutory grant of immunity from application of such regulation, since this is not a case of a regional government

district being regulated by a part of the region, since construction of buildings pertains to the City's local affairs and the regulation is localized and since there is no other body available to regulate besides the PBC [*sic*], it is necessary to enforce the City's building regulations for the protection of its residents. This is true particularly as there is no evidence of any frustration of PBC's authority."

On May 17, 1994, the Commission filed a motion for reconsideration of the above-quoted order. This motion was denied and the Commission timely filed a notice of appeal, seeking review of the April 20, 1994, order and subsequent denial of its motion for reconsideration.

On appeal, the Commission contends that it is exempt from compliance with the City of Waukegan's building regulations, including building permit fees because, as applied to the Commission, the regulations are in excess of Waukegan's home rule power under article VII, section 6(a), of the Illinois Constitution (Ill. Const. 1970, art. VII, § 6(a)). In response, Waukegan maintains that nothing in the Public Building Commission Act (Act) (50 ILCS 20/1 *et seq.* (West 1994)) grants the Commission an exemption from the building regulations of host municipalities such as Waukegan. The City further argues that the broad grant of power to municipalities under article VII, section 6(a), of the Constitution and section 11—30—4 of the Illinois Municipal Code (65 ILCS 5/11—30—4 (West 1994)) unquestionably gives it the right to require the Commission to comply with its building regulations.

Preliminarily, we note that summary judgment is proper where no genuine issue of material fact exists and the question before the court is solely a matter of law. (735 ILCS 5/2—1005(c) (West 1994); *Jacobson v. General Finance Corp.* (1992), 227 Ill. App. 3d 1089, 1093.) Our function in reviewing a grant of summary judgment is to determine whether the trial court correctly found that there were no genuine issues of material fact and, if there were not, whether the trial court correctly entered judgment as a matter of law. (*Village of Long Grove v. Austin Bank* (1994), 268 Ill. App. 3d 70, 73.) We review a summary judgment *de novo. Long Grove,* 268 Ill. App. 3d at 73; *Town of Avon v. Geary* (1991), 223 Ill. App. 3d 294, 299.

Before turning to the issues raised by the Commission on appeal, we provide the following in the way of background on the history, purpose, and powers of the Commission. The legislature authorized creation of the Commission by passing the Public Building Commission Act (Act) in 1955. (50 ILCS 20/1 (West 1994).) The Act "was designed to enable some units of local government, including coun-

ties, to acquire, construct or improve public buildings without the necessity of resorting to tax referendums to accomplish that purpose." *De Witt County Public Building Comm'n v. City of De Witt* (1984), 128 Ill. App. 3d 11, 21.

Section 2 sets forth the findings of the legislature which led to the passage of the Act. (See 50 ILCS 20/2 (West 1994).) Section 2 states, *inter alia*, that in many county seats and municipalities the buildings and facilities for the furnishing of government services are obsolete and no longer adequate to meet the needs of the citizens they serve. In view of this problem, section 2 declares that the construction, acquisition, and enlargement of public improvements, buildings, and facilities are necessary and desirable. 50 ILCS 20/2 (West 1994).

■ Thus, the legislature authorized the creation of public building commissions "for the limited purpose of constructing, acquiring, enlarging, improving, repairing or replacing" public buildings and other facilities across the State. (50 ILCS 20/4a (West 1994).) The Commission is "a municipal corporation and constitutes a body both corporate and politic separate and apart from any other municipal corporation or any other public or governmental agency." (50 ILCS 20/14 (West 1994).) Among the powers granted to the Commission by the Act is the power to select, locate, and designate sites to be acquired for the construction, alteration, or improvement of public buildings. (50 ILCS 20/14(a) (West 1994).) However, the Commission's power to select sites is subject to approval, by a three-fourths majority, of the governing body of the municipality where the site is located. (50 ILCS 20/14(a)(2) (West 1994).) The Act also provides the Commission with other powers to be used in furtherance of its purposes, including: the power to acquire fee simple title to real estate; to demolish, repair, alter, or improve buildings; to provide buildings for use by local government; to pave and improve streets and sidewalks; to maintain and operate buildings; to rent space in buildings; to procure insurance; and to borrow money. See 50 ILCS 20/14(b) through (n) (West 1994).

■ With the above background in mind, we now turn to the merits of the Commission's appeal. Initially, the Commission concedes that under article VII of the Illinois Constitution home rule units such as Waukegan have the general power to enact building regulations. Article VII, section 6(a), provides in pertinent part:

"[A] home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare ***." (Ill. Const. 1970, art. VII, § 6(a).)

Further, as the Commission concedes, the Illinois Municipal Code specifically grants municipalities the power to "prescribe the strength and manner" of the construction of buildings. (65 ILCS 5/11—30—4 (West 1994).) The Commission also concedes that nothing in the Public Building Commission Act expressly exempts the Commission from complying with Waukegan's building regulations. Finally, the Commission concedes that in light of *Village of Bolingbrook v. Citizens Utilities Co.* (1994), 158 Ill. 2d 133, the Act does not impliedly preempt Waukegan's building regulations.

Although it recognizes the necessity of the above concessions regarding Waukegan's general power to regulate construction activities, the Commission nevertheless contends that Waukegan's building regulations exceed its home rule power in this case because, *as applied* to the Commission, the regulations do not pertain to the City's government and affairs. (See Ill. Const. 1970, art. VII, § 6(a).) The Commission argues that Waukegan's attempt to subject the Commission to its building permit requirements implicates statewide rather than local concerns, therefore intruding upon the Commission's statutory powers. In support of this contention, the Commission relies upon *Bolingbrook*, cited above, as well as earlier cases addressing the immunity of various State agencies and local governmental entities from the regulations of home rule units.

In *Bolingbrook*, the Village of Bolingbrook (Village) filed suit against the defendant Citizens Utility Company (Company) alleging that the Company discharged raw sewage from its facilities located in the Village, in violation of various Village ordinances. The Company, an investor-owned Illinois public utility, moved to dismiss the complaint, claiming that the Public Utilities Act (220 ILCS 5/1—101 *et seq.* (West 1994)) preempted the Village's ordinances. The trial court agreed that the ordinances were preempted and granted the motion to dismiss; the appellate court affirmed. The supreme court, however, reversed the trial and appellate courts.

■ The supreme court first concluded that the ordinances in issue were a valid exercise of the Village's home rule power. Next, the court addressed the Company's claim that, as applied to it, the ordinances did not pertain to the Village's government and affairs. (*Bolingbrook*, 158 Ill. 2d at 138.) The court stated that an ordinance pertains to the government and affairs of a home rule unit "where the ordinance relates to problems that are local in nature rather than State or national." (*Bolingbrook*, 158 Ill. 2d at 138.) The court then explained how the test is applied:

"Extreme cases are clear. If a problem is purely statewide or national in nature, it does not pertain to the government and af-

fairs of a home rule unit. On the other hand, if a problem is purely local in nature, it does pertain to the government and affairs of a home rule unit. Difficulty arises, however, when a problem has a local as well as a statewide or national impact." *Bolingbrook*, 158 Ill. 2d at 138-39.

According to the *Bolingbrook* court, in the more difficult cases where a problem has both local and statewide impact, courts are to consider three factors: (1) the nature and extent of the problem; (2) the units of government which have the most vital interest in a solution; and (3) the role traditionally played by local and statewide authorities in dealing with the problem. *Bolingbrook*, 158 Ill. 2d at 139, citing *Kalodimos v. Village of Morton Grove* (1984), 103 Ill. 2d 483, 501.

The *Bolingbrook* court then applied the above three factors to the facts before it and concluded that the Village's regulation of sewage discharges was addressed to a primarily local problem. The *Bolingbrook* court rejected the Company's assertion that the Public Utilities Act's "comprehensive regulation of public utilities" impliedly preempted the Village's authority to regulate in this area. The court declined to fashion a doctrine of implied preemption of home rule authority and held that preemption of home rule authority must be express. *Bolingbrook*, 158 Ill. 2d at 142.

■ Viewing the present case in light of *Bolingbrook*, we reject the Commission's attempt to mount an "as applied" challenge to the City's power to enact ordinances prescribing the strength and manner of construction in Waukegan and setting construction permit fees. Initially, we disagree with the Commission's suggestion that the present case is one of the "difficult" cases referred to in *Bolingbrook* where the challenged ordinances are addressed to both statewide and local problems. Contrary to the Commission's arguments, the concern addressed by Waukegan's building regulations—the need to have buildings constructed safely and according to uniform standards—is entirely local.

Even assuming *arguendo* that this was one of the "difficult" cases requiring application of the *Bolingbrook* three-part test, it is clear that the regulations are valid. The extent of the problem, the unit of local government having the most vital interest in a solution, and the role traditionally played by local government and statewide authorities all indicate unequivocally that building regulations are directed to local concerns and are a valid exercise of home rule power, even when applied to activities of the Commission.

The regulations at issue here were enacted primarily to protect the health and safety of Waukegan residents and those who work,

visit, and do business in Waukegan. The City correctly recognizes that it has a responsibility to both its citizens and visitors to ensure that all buildings constructed in Waukegan meet the safety and quality standards prescribed by the city council. Similarly, Waukegan has a responsibility to its police and fire departments, which are responsible for handling emergencies in and around buildings in Waukegan, to ensure that all developers and builders comply with Waukegan's life safety codes. Despite the fact that the regulations may apply to entities such as the Commission, which carry on activities in more than one municipality, the regulations themselves are addressed to exclusively local concerns. Thus, we reject the Commission's argument that Waukegan's building regulations are an invalid exercise of home rule power as applied to the Commission's activities.

We further find unpersuasive the Commission's assertion that subjecting it to Waukegan's building regulations frustrates the purpose for which the Commission was created and "subjugates the Commission to the City." We find no evidence in the record indicating that Waukegan's attempt to enforce its building regulations and collect the permit fee from the Commission is in any way designed to frustrate or subjugate the Commission. Instead, we agree with the trial court's characterization of the ordinances in question as measures intended to protect the health and safety of people in Waukegan and ensure that all construction, whether undertaken by private developers or the Commission, meets uniform standards set by the City. Nor do we accept the Commission's suggestion that the City's building regulations are little more than an attempt by the City to "control the primary functions of the Commission." The Commission offers no support for this assertion of improper motive on the part of the City, and we find none in the record. In short, the Commission has failed to explain how building regulations and reasonable permit fees, which it admits are generally a matter of local concern, take on statewide importance when applied to construction projects undertaken by the Commission.

Our conclusion that the Commission is not exempt from complying with Waukegan's building regulations is well supported by prior cases involving challenges to municipalities' power to apply regulatory ordinances to other units of local government. For example, in *Village of Swansea v. County of St. Clair* (1977), 45 Ill. App. 3d 184, St. Clair County (County) decided to build a dog pound on land it owned within the Village of Swansea (Village). The construction and staffing of the facility were to be accomplished in conformance with the Animal Control Act. (Ill. Rev. Stat. 1973, ch. 8, par. 351 *et seq.*

(now codified, as amended, at 510 ILCS 5/1 *et seq.* (West 1994)).) In response to the County's decision, the Village instituted an action seeking a declaratory judgment that the County was required to comply with the Village's zoning, building, sewer, electrical, and plumbing ordinances. (*Swansea*, 45 Ill. App. 3d at 185.) After examining the grant of power to the County contained in the Animal Control Act in light of the Village's home rule power under the Illinois Constitution, the court concluded that the County was exempt from the Village's zoning ordinances but had to comply with its building, sewer, electrical, and plumbing ordinances, unless such compliance would interfere with the County's performance of its functions under the Animal Control Act. *Swansea*, 45 Ill. App. 3d at 187-88.

The court reasoned that subjecting the County to the Village's zoning ordinances would frustrate the legislature's intent in passing the Animal Control Act by allowing municipalities to use their zoning regulations to keep dog pounds out. (*Swansea*, 45 Ill. App. 3d at 187.) The court, however, held that the same was not true of the Village's building ordinances:

"The distinction is obvious, for these latter ordinances are not by their very nature capable of thwarting the proposed building project. Rather, such ordinances as these are designed to promote public health and public safety. Thus, in line with our above conclusions, we believe [the County] must comply with these ordinances unless such compliance interferes with [the County's] functions under the Animal Control Act." (*Swansea*, 45 Ill. App. 3d at 188.)

Because there was insufficient evidence in the record to determine whether compliance with the building ordinances would prevent the county from carrying out its functions under the Animal Control Act, the court remanded the cause for a hearing on that issue. *Swansea*, 45 Ill. App. 3d at 188.

The conclusion of the appellate court in *Swansea* was carried one step further by the supreme court in *Wilmette Park District v. Village of Wilmette* (1986), 112 Ill. 2d 6. There, the court held that a park district exercising its statutory authority under the Park District Code (Ill. Rev. Stat. 1983, ch. 105, par. 1—1 *et seq.* (now codified, as amended, at 70 ILCS 1205/1—1 *et seq.* (West 1994))) is not exempt from the zoning ordinances of its host municipality, a home rule unit. The litigation in *Wilmette* began when the Wilmette Park District (District) filed a complaint in the circuit court seeking, among other things, a declaration that the District was exempt from the village's zoning ordinances and that it did not have to apply for a special use permit to install lights on property known as the Village Green. *Wilmette*, 112 Ill. 2d at 9-10.

The *Wilmette* court first noted that the Park District Code does not provide park districts with immunity from the zoning ordinances of host municipalities. The court then rejected the District's argument that, because it granted park districts the plenary authority to operate parks, it impliedly follows that the legislature intended to immunize park districts from municipal zoning ordinances which could have an effect on park operations. (*Wilmette*, 112 Ill. 2d at 14.) The court concluded: "Absent an explicit statutory grant of immunity, the mere fact that the park district, a local unit of government, has a statutory duty to operate its parks cannot be extended to support the inference that it can exercise its authority without regard to the zoning ordinances of its host municipality." *Wilmette*, 112 Ill. 2d at 14-15; see also *County of Lake v. Semmerling* (1990), 195 Ill. App. 3d 93 (following *Wilmette* and holding that township road commissioner must comply with Lake County zoning ordinance).

■ *Swansea* and *Wilmette* are directly applicable to the present case. The Public Building Commission Act, like the statutes at issue in those cases, contains no provision expressly exempting the Commission from complying with the ordinances of its host municipalities. It is true, as the Commission points out, that the Act broadly empowers the Commission to engage in the construction, acquisition, or enlargement of public improvements buildings and facilities (see 50 ILCS 20/4a (West 1994)) and that, pursuant to the Act, the Commission must be free to carry out its duties. However, we must also recognize that under the Illinois Municipal Code and article VII, section 6, of the Illinois Constitution, the City of Waukegan should be allowed to enforce its building regulations and collect reasonable permit fees. While we need not prioritize the respective duties and rights of the City and the Commission, we must strike an appropriate balance between their rights under the facts of this case. (See *Wilmette*, 112 Ill. 2d at 17; *County of Lake*, 195 Ill. App. 3d at 98.) Given the fact that Waukegan's building regulations address purely local concerns and the lack of evidence that the Commission's functions will be thwarted by subjecting it to Waukegan's building regulations, we agree with the conclusion reached by the trial court in the present case.

A review of the cases cited by the Commission in support of its position reveals that they are inapposite. The principal case upon which the Commission relies is *City of Highland Park v. County of Cook* (1975), 37 Ill. App. 3d 15. There, the City of Highland Park (City) filed an action seeking to enjoin Cook County (County) from widening the portion of Lake-Cook Road which passes through Highland Park. The City alleged that under two ordinances which it

had adopted pursuant to its home rule power the project could not proceed without its approval. The ordinances provided, in effect, that no unit of local government could commence any installation, construction, or repair of any road within the City's boundaries without the City's approval. *Highland Park*, 37 Ill. App. 3d at 19.

The County did not seek or obtain the City's approval for the road widening project, taking the position that only State approval, under the Illinois Highway Code (Ill. Rev. Stat. 1973, ch. 121, par. 1—101 *et seq.* (now codified, as amended, at 605 ILCS 5/1—101 *et seq.* (West 1994))), was needed. In response, the City contended that although the State had approved the project, the City was not precluded from enforcing the ordinances because they were a valid exercise of the City's home rule power. *Highland Park*, 37 Ill. App. 3d at 17-19.

The *Highland Park* court disagreed, stating that the Highway Code:

> "[R]eflects a carefully stratified system of control over the designation, planning, construction and maintenance of the highways, roads and streets throughout the State. It specifies the respective responsibilities of the State *** and each of the three levels of local government—counties, road districts and municipalities. It also spells out the relationships between these four levels of government, including the coordination of their actions so as to assure a systematic approach to the task of providing a workable system of highways and roads throughout the entire State." *Highland Park*, 37 Ill. App. 3d at 23.

In light of the above statement, the court held that under the Highway Code counties, not municipalities, are empowered to make decisions and enter into agreements with the State regarding the planning, construction, and repair of highways. (*Highland Park*, 37 Ill. App. 3d at 23.) According to the court, allowing municipalities to have veto power over construction projects involving county and State roads would produce chaos and jeopardize the "systematic structured approach to the designation, construction and maintenance of highways which is the foundation of the State Highway Code." (*Highland Park*, 37 Ill. App. 3d at 24.) The court further rejected the City's assertion that the ordinances requiring City approval were a valid exercise of home rule power. Noting that a home rule unit may only exercise powers pertaining to its government and affairs, the court concluded that the ordinances at issue were addressed to the statewide highway system, an area properly left to the County and State. *Highland Park*, 37 Ill. App. 3d at 25.

*Highland Park* is plainly distinguishable from the present case. First, unlike the Highway Code, the Public Building Commission Act

does not in any way imply that the Commission is to have exclusive authority over the location and manner of construction of Commission-initiated projects. On the contrary, to the extent the Act apportions such authority at all, it provides that host municipalities have the power to approve or reject building sites selected by the Commission. See 50 ILCS 20/14(a)(1), (a)(2) (West 1994).

Second, unlike the ordinances at issue in *Highland Park*, Waukegan's building ordinances clearly pertain to its government and affairs. The ordinances found invalid by the court in *Highland Park* sought to regulate the construction of highways, an area which implicates statewide concerns because highways, by definition, generally must pass through more than one municipality. Thus, even in the absence of the provisions of the Highway Code relied upon by the *Highland Park* court, it is clear that local attempts to regulate highway construction would implicate statewide concerns. By contrast, Waukegan's building regulations seek only to regulate the construction of buildings within the City's corporate limits. We therefore find that *Highland Park* is inapplicable to the case at bar.

We likewise find inapposite the other cases relied upon by the Commission. In each of those cases, as in *Highland Park*, the challenged regulations, though purportedly enacted pursuant to home rule power, implicated significant statewide concerns. See *Village of Oak Brook v. County of Du Page* (1988), 173 Ill. App. 3d 490 (following *Highland Park* and rejecting village's attempt to enjoin Du Page County from widening county roads within Oak Brook); *Ampersand, Inc. v. Finley* (1975), 61 Ill. 2d 537 (invalidating county ordinance imposing fee for filing civil cases to support law library because it significantly impacts on administration of justice, a statewide concern).

In view of Waukegan's legitimate and compelling interest in enacting building ordinances to protect the health and safety of citizens of and visitors to Waukegan, and in view of the absence of any evidence of an intent on the part of the legislature to exempt the Commission from host municipalities' building regulations, we follow *Swansea* and *Wilmette* and hold that the Commission must pay the permit fee in the present case.

Accordingly, for the reasons set forth above, we affirm the judgment of the circuit court of Lake County.

Affirmed.

McLAREN, P.J., and COLWELL, J., concur.