ALBERT STEIER, JR., *et al.*, Plaintiffs-Appellants, v. BATAVIA PARK DISTRICT, Defendant-Appellee.

Second District   No. 2—95—1397

Opinion filed September 25, 1996.

HUTCHINSON, J., dissenting.

Lloyd J. Tyler, of Tyler & Hughes, P.C., of Aurora, and George E. Bullwinkel, John T. Allen, Jr., and Thomas D. Laue, all of Bullwinkel Partners, Ltd., of Chicago, for appellants.

Bruce A. Brown and Jennifer M. Gomoll, both of Goldsmith, Thelin, Dickson & Brown, of Aurora, for appellee.

PRESIDING JUSTICE McLAREN delivered the opinion of the court:

Plaintiffs, Albert J. Steier, Jr., William G. Ruby, and James D. Tully, appeal the trial court's order denying both their motion for summary judgment and objections to affidavits filed by defendant, the Batavia Park District (park district), and granting the defendant's cross-motion for summary judgment declaring valid the defendant's "Amended Ordinance Limiting the Use of *Jet Skis*" (Ordinance) (see Batavia Park District Amended Ordinance Limiting the Use of Jet Skis, Ordinance No. 101 (eff. July 18, 1989)). We reverse.

Initially, we note "Jet Ski" is a registered trademark of a particular manufacturer's brand of "personal watercraft." Therefore, to avoid contributing to the dilution of a registered trademark, we will use the term "personal watercraft."

The defendant is an Illinois municipal corporation organized under the authority of the Park District Code (Code) (see 70 ILCS 1205/1—1 et seq. (West 1994)). The defendant has jurisdiction over the portion of the Fox River referred to by the parties as the "Batavia section." Both parties agree the Batavia section lends itself to various recreational uses, including boating. On April 7, 1975, the defendant applied to the Army Corps of Engineers (Corps) for a permit to build a boat launch on the Fox River. The Corps issued defendant a building permit. This permit included provisions prohibiting the defendant from (1) infringing on any federal, state, or local law or regulation; (2) preventing the "full and free use by the public" of the navigable waters of the Fox River (see 70 ILCS 1205/11.1—3(f) (West 1994)); and (3) unreasonably interfering with navigation by the existence or use of the launch. Subsequently, the defendant built the launch.

In 1987, a number of Batavia residents began complaining about personal watercraft and the manner in which they were being operated in the Batavia section. Batavia residents complained personal watercraft produced excessive noise, tended to congregate in the Batavia section of the river, caused excessive wakes, and disrupted canoeing and fishing. In addition, Batavia residents complained

personal watercraft users travelled at up to 40 miles per hour, circled boats, cut in front of canoeists, jumped out of the water, and performed figure eights and sharp turns. Further, residents complained that they had difficulty hearing each other speak over the noise of the personal watercraft. In response to the complaints, the defendant park district enacted the following ordinance to address these complaints:

"It shall be unlawful for any person to use, or attempt to use, the Park District Launch for the purpose of launching or removing jet skis [personal watercraft] on or from the Fox River, except for the following times and only when the Park District Launch is opened generally to the public:

| Wednesday | 1 p.m. to 9 P.M. |
| Saturdays | Noon to 5 P.M." |

On September 21, 1993, the plaintiffs filed a complaint seeking a declaratory judgment that the Ordinance was "void and of no effect." The trial court granted the defendant's motion to dismiss two of the original plaintiffs, Fox Valley Personal Water Craft Club and the National Marine Manufacturers, for lack of standing. We note the defendant did not raise an objection to the standing of the present plaintiffs, Steier, Ruby, and Tully. In addition, the trial court denied the defendant's motion to dismiss the complaint. The parties then filed cross-motions for summary judgment. The parties agreed no genuine issue of material fact existed and the trial court should decide the matter based on the evidence submitted to date, which included depositions, affidavits, and other exhibits.

After determining the evidence presented no genuine issue of material fact, the court found: (1) the Batavia section is a "navigable highway"; (2) the defendant has the authority to operate and regulate the launch under the Code; (3) no federal law prohibits the restrictions contained in the Ordinance; and (4) the Ordinance neither exceeds the defendant's authority under the Code, nor is it an unreasonable restriction on navigation of the Batavia section. Therefore, the trial court granted the defendant's cross-motion for summary judgment. This appeal followed.

On appeal, the plaintiffs essentially argue: (1) the defendant lacked authority to enact the Ordinance; (2) the Ordinance violates the commerce clause of the United States Constitution (U.S. Const., art. I, § 8, cl. 3) because it prohibits access to a navigable waterway; (3) the Ordinance violates Illinois law because it is unreasonable and arbitrary; and (4) the affidavits submitted in support of the reasonableness of the Ordinance do not comply with Supreme Court Rule 191 (see 145 Ill. 2d R. 191).

■ Initially, we must address the defendant's contention that the plaintiffs lack standing to challenge the Ordinance. We agree with the plaintiffs that this issue is waived because the defendant failed to raise it prior to this appeal. As an affirmative defense, standing must be raised within the time for pleading or the issue is waived on appeal. *In re Marriage of Schlam*, 271 Ill. App. 3d 788, 796 (1995), citing 735 ILCS 5/2—619(a)(9) (West 1994). We hold that, because defendant failed to contest plaintiffs' standing when challenging the standing of the plaintiff organizations, the issue is waived. We will, therefore, address the merits.

Summary judgment is proper where no genuine issue of material fact exists and the question before the court is solely a matter of law. 735 ILCS 5/2—1005(c) (West 1994); *Lake County Public Building Comm'n v. City of Waukegan*, 273 Ill. App. 3d 15, 18 (1995). On appeal, we must determine whether the trial court correctly found that there were no genuine issues of material fact and, if not, whether the trial court correctly entered judgment as a matter of law. *Lake County*, 273 Ill. App. 3d at 18. We review the trial court's order *de novo*. *Lake County*, 273 Ill. App. 3d at 18.

The plaintiffs argue the trial court erroneously found the defendant had the authority to enact the Ordinance under the Code. The plaintiffs urge us to strictly construe authorizing legislation against the defendant because the defendant is a non-home-rule entity. Accordingly, the plaintiffs claim the ordinance violates the Illinois and federal policy of the full and free use by the public of all navigable waters. The defendant acknowledges it is a non-home-rule entity. However, the defendant argues section 11.1—3(f) of the Code provided the power to enact the Ordinance at issue. See 70 ILCS 1205/11.1—3(f) (West 1994).

■ It is well settled that a park district is a non-home-rule municipal entity (Ill. Const. 1970, art. VII, § 8; *Springfield Park District v. Buckley*, 140 Ill. App. 3d 524, 527 (1986)) and, thus, has no inherent power. *Ross v. City of Geneva*, 71 Ill. 2d 27, 31 (1978). Instead, a park district has only the powers delegated to it by the legislature. *Ross*, 71 Ill. 2d at 31; *Springfield Park District*, 140 Ill. App. 3d at 527. Moreover, statutes that grant power to a non-home-rule entity are construed strictly against the entity that claims the right to exercise the power. *Ross*, 71 Ill. 2d at 31; *Village of Bolingbrook v. Citizens Utilities Co.*, 267 Ill. App. 3d 358, 359 (1994).

■ Section 11.1—3(f) of the Code authorizes park districts:

"To license, regulate, and control the use and operation *** of all water-borne vessels in the harbor and within 1000 feet of the outer limits of the harbor, or otherwise within the jurisdiction of

the park district, except that such park district shall not forbid the full and free use by the public of all navigable waters, as provided by Federal law." 70 ILCS 1205/11.1—3(f) (West 1994).

The Code defines "harbor" as follows:

"The term 'harbor', as used in this article includes harbors, marinas, slips, docks, piers, breakwaters, and all buildings, structures, facilities, connections, equipment, parking areas and all other improvements for use in connection therewith." 70 ILCS 1205/11.1—1 (West 1994).

After reviewing the record, we find no evidence to support the defendant's contention that section 11.1—3(f) of the Code authorized the defendant to enact the Ordinance at issue. Nothing in the record supports the defendant's position that the Batavia-Fox River launch is a "harbor" within the meaning of the Code. Because there is no evidence that the Batavia section of the Fox River is a harbor, section 11.1—3(f) does not grant the defendant the power to "regulate[ ] and control" the use of the launch. 70 ILCS 1205/11.1—3(f) (West 1994).

In addition, the plaintiffs argue section 11.1—3(f) did not provide the defendant with the power to enact the Ordinance because the Ordinance prohibits "the full and free use by the public of all navigable waters, as provided by Federal law." 70 ILCS 1205/11.1—3(f) (West 1994). The defendant argues that the Ordinance is a reasonable regulation of a navigable water and thus does not violate federal law. We agree with the plaintiffs.

■ It is well established that under the commerce clause of the United States Constitution (U.S. Const., art. I, § 8, cl. 3) the federal government has the power to regulate navigable waters. *Kaiser Aetna v. United States*, 444 U.S. 164, 173-74, 62 L. Ed. 2d 332, 341-43, 100 S. Ct. 383, 389-90 (1979); *City of Chicago v. Law*, 144 Ill. 569, 578-79 (1893). Accordingly, the United States Congress enacted section 10 of the Rivers and Harbors Appropriation Act of 1899 (Rivers and Harbors Act), which provides:

"[I]t shall not be lawful to build or commence the building of any *** [structure] in any *** navigable river *** except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army." 33 U.S.C. § 403 (1994).

Thus, a municipality may not build any structure in a navigable river without permission from the Corps. 33 U.S.C. § 403 (1994); see *City of Chicago*, 144 Ill. at 579-80. In addition, the Corps may place certain conditions on the issuance of a permit. *United States v. Alaska*, 503 U.S. 569, 590-91, 118 L. Ed. 2d 222, 241, 112 S. Ct. 1606, 1618 (1992).

■ In the instant case, the Corps issued a permit pursuant to sec-

tion 10 of the Rivers and Harbors Act (33 U.S.C. § 403 (1994)), allowing the defendant to build the launch. However, the permit placed the following conditions on the defendant:

"That no attempt shall be made by the permittee to prevent the full and free use by the public of all navigable waters at or adjacent to the [launch].

\* \* \*

That there shall be no unreasonable interference with navigation by the existence or use of the [launch]."

After reviewing the record, we determine that the Ordinance violates the permit granted by the Corps. By prohibiting personal watercraft from using the launch 5¹/₂ days of the week, the defendant has essentially "prevent[ed] the full and free use by the public" of the Fox River and unreasonably interfered with navigation. Therefore, the ordinance violates the permit issued by the Corps. Thus, we determine that the defendant lacked the authority to enact the Ordinance.

The case at bar is similar to *Buckley v. City of Redding*, 66 F.3d 188 (9th Cir. 1995). In *Buckley*, the United States Court of Appeals for the Ninth Circuit recognized a federal right of access for personal watercraft to navigable bodies of water. The court found personal watercraft could not be prevented from accessing and using a particular navigable waterway from a boat launch facility. *Buckley*, 66 F.3d at 193. In *Buckley*, the right of access originated in the Federal Aid in Sport Fish Restoration Act (Fish Act) (16 U.S.C. §§ 777 through 777k (1994)). Because the municipal defendant in *Buckley* accepted funds provided under the Fish Act to build a boat launch, the defendant was contractually obliged to accept the conditions set forth in the Fish Act's enabling regulations. Among these were a requirement that the defendant's launch accommodate " 'power boats with common horsepower ratings' " (emphasis omitted) (*Buckley*, 66 F.3d at 192, quoting 50 C.F.R. § 80.24 (1995)) classified by the United States Coast Guard. Because personal watercraft fall within the common horsepower rating, the defendant could not restrict such craft. *Buckley*, 66 F.3d at 192.

The defendant distinguishes *Buckley* from the case at bar by pointing out that the defendant did not build the launch with funds provided under the Fish Act. We find this distinction immaterial because in the instant case the defendant built the launch with permission from the Army Corps of Engineers. Accordingly, the defendant in the instant case must comply with the conditions placed on it by the Corps, just as the defendant in *Buckley* had to comply with the Fish Act (16 U.S.C. §§ 777 through 777k (1994)). We recog-

nize that the condition at issue in the instant case differs from the condition at issue in *Buckley*. Nevertheless, we are persuaded by the court's reasoning that a municipal defendant is contractually obliged to accept conditions set forth in an enabling document.

We recognize the defendant has a legitimate interest in preventing noise, wake, and wildlife problems. However, the Ordinance unreasonably singles out one type of watercraft in an effort to eliminate the deleterious effects that excessive noise and speed create. The problems of excessive noise and speed are not solely related to personal watercraft. We believe it is unreasonable to deny the use of the Batavia launch to users of personal watercraft and continue to allow all other watercraft of the same class (see United States Coast Guard Regulation 46 C.F.R. § 24.10—17 (1994)) to use the launch. Instead of singling out one type of watercraft, the defendant should enact appropriate ordinances which apply to all watercraft. See *Springfield Park District*, 140 Ill. App. 3d at 531; *Great Lakes Motorcycle Dealers Ass'n v. City of Detroit*, 38 Mich. App. 564, 196 N.W.2d 787 (1972). The defendant has the right to regulate, but a regulation applies equally to all. Because the Ordinance singles out one type of watercraft, it is unreasonable and thus violates the permit issued by the Corps.

The defendant argues that it has the authority to enact the Ordinance pursuant to its police powers. We reject this argument. We recognize that section 11—4 of the Code grants the defendant authority to "take charge of, control and police" its section of the Fox River. 70 ILCS 1205/11—4 (West 1994). However, section 11—5 of the Code limits the defendant's power in that regard. Section 11—5 provides that the authority granted in section 11—4 does not authorize the defendant to "interfere with the navigation of any navigable body of water or to shut off the access to any public dock or landing thereon." 70 ILCS 1205/11—5 (West 1994). By prohibiting personal watercraft from using the launch $5^1/2$ days of the week, the defendant has essentially "shut off" access. Thus, the defendant has exceeded its authority granted by section 11—4 of the Code (70 ILCS 1205/11—4 (West 1994)), and its argument fails.

Because we find the Ordinance invalid on the grounds stated above, we need not address the plaintiffs' more specific contentions that the ordinance violates: (1) "An Ordinance for the Government of the Territory of the United States north-west of the [R]iver Ohio" (Ordinance of 1787); (2) the "dormant" commerce clause of the United States Constitution; and (3) Illinois' prohibition against overly broad and arbitrary classifications. In addition, because the issue is moot, we need not address the plaintiffs' argument that the affidavits

submitted in support of the ordinance do not comply with Supreme Court Rule 191 (see 145 Ill. 2d R. 191).

The judgment of the circuit court of Kane County is reversed.

Reversed.

GEIGER, J., concurs.

JUSTICE HUTCHINSON dissenting:

The majority's determination that defendant lacks the authority under the Code to regulate the launch depends on the construction of two provisions, section 11.1—3(f) and section 11.1—1. I examine each as it relates to defendant's regulatory authority.

Section 11.1—3(f) expressly grants defendant the power to "license, regulate, and control the use and operation *** of all water-borne vessels"—and, therefore, personal watercraft—in two situations. 70 ILCS 1205/11.1—3(f) (West 1994). First, defendant is authorized to regulate any water-borne vessel in a harbor or within 1,000 feet of the outer limits of a harbor. 70 ILCS 1205/11.1—3(f) (West 1994). The definition of "harbor" contains a list of places or facilities included in the definition of a harbor provided these places or facilities are used "in connection therewith." 70 ILCS 1205/11.1—1 (West 1994). Among the listed places and facilities are "harbors." Reading "harbor" as a term of art referring exclusively to "a part of a body of water protected and deep enough to furnish anchorage" (Webster's Ninth New Collegiate Dictionary 552 (1990)), rather than as a general term encompassing all the places and facilities set forth in section 11.1—1, yields the unworkable result that the term "harbor" as used in the Code includes harbors used in connection with harbors. Hence, such a construction renders meaningless the second usage of the term "harbor" in section 11.1—1. Courts should avoid construing a statute in a manner that reduces any element of the legislation to mere surplusage. See, e.g., Bonaguro v. County Officers Electoral Board, 158 Ill. 2d 391, 397 (1994) (if possible, when determining the legislature's intent, statutes should be construed so each portion has meaning).

The more reasoned construction is that the first usage of "harbor" is a general term: a heading for section 11.1—1. Under this general rubric falls each of the different places and facilities that qualifies as a "harbor." The "in connection therewith" language refers to improvements made to each place or facility falling within a listed category (e.g., a dock built on a harbor, or a ramp connecting two docks located on a river). Under this construction, defendant's launch

is a "harbor" within the general meaning section 11.1—1 gives to the term. Therefore, defendant has the authority to regulate the use of the launch.

Second, defendant is authorized to regulate any water-borne vessel "otherwise within the jurisdiction of the park district." 70 ILCS 1205/11.1—3(f) (West 1994). I would think it obvious that a water-borne vessel introduced onto the Batavia section from defendant's boat launch is within defendant's jurisdiction if for no other reason than it must travel over defendant's property to reach the Batavia section. Again, therefore, I conclude that section 11.1—3(f) expressly grants defendant the authority to regulate the usage of its launch.

My conclusion is amply supported by other provisions of the Code dealing with the issue of park district regulatory authority. For example, the legislature has expressly provided that defendant's general powers are not limited to those enumerated in the Code. See 70 ILCS 1205/11.1—3 (West 1994) (before listing the general powers of park districts, the legislature used the phrase, "its rights and powers include but are not limited to the following"). The legislature has also provided broad police powers over navigable waters. See 70 ILCS 1205/11—4 (West 1994) (granting park districts "[p]olice powers" to "take charge of, control and police [an adjacent navigable] body of water and the land thereunder").

The majority asserts, "[b]ecause there is no evidence that the Batavia section of the Fox River is a harbor, section 11.1—3(f) does not grant the defendant the power to 'regulate[ ] and control' the use of the launch." 283 Ill. App. 3d at 972, quoting 70 ILCS 1205/11.1—3(f) (West 1994). To state such a proposition is to refute it. I would be surprised if the majority seriously meant to assert defendant lacks the authority to close the launch to the public at night, during periods of inclement weather, or on the basis of other safety concerns—provided, of course, the majority concurred in defendant's judgment concerning what constituted prudent public policy. On the contrary, the legislature has expressly granted defendant the authority to regulate the use of navigable waterways and park district structures used to access such waterways.

Notwithstanding its holding that defendant lacked the authority to promulgate the regulation under the Code, the majority reaches the federal issue of public use of navigable waterways. The majority holds (1) that the Ordinance prevents the full and free public use of the Fox River and unreasonably interferes with navigation; and (2) there is a federal right to access for personal watercraft to navigable bodies of water. It is a long-standing maxim that appellate courts need only rule on those issues necessary to the decision. See *Mc-*

*Daniel v. Bullard*, 34 Ill. 2d 487, 494 (1966) (declining to reach constitutional question where issue may be resolved via statutory construction); see also R. Aldisert, Opinion Writing 87 (1990). Therefore, if defendant truly lacked the authority to regulate the use of the launch, there would be no reason to reach these federal issues. Hence, I infer the majority is cautious in its statutory analysis of the Code and seeks to buttress its judgment by relying on federal law. I discuss each of the majority's holdings under federal law in turn.

In support of its first holding, the majority neither cites authority nor engages in any analysis beyond naked assertion. The quotation from the permit issued by the Corps fails to provide substantive justification for the majority's holding. The permit defines neither "full and free use" nor "unreasonable interference." Unfortunately, neither does the majority. The sum total of its analysis is "[b]y prohibiting personal watercraft from using the launch 5¹/₂ days of the week, *** defendant has essentially 'prevent[ed] the full and free use by the public' of the Fox River and unreasonably interfered with navigation." 283 Ill. App. 3d at 973.

There are several reasons to avoid this result. A permit containing the identical "full and free use" condition has been interpreted to prohibit obstruction to only the navigable body of water and not a mooring structure built on the water. See *First National Bank v. SFIC Gulf Coast Properties, Inc.*, No. 91—3781 (E.D. La. February 10, 1993). Additionally, in the absence of contrary congressional action, a state's regulatory authority over the use of and access to its navigable bodies of water is plenary. *Economy Light & Power Co. v. United States*, 256 U.S. 113, 121, 65 L. Ed. 847, 854, 41 S. Ct. 409, 412 (1921). Consequently, the "full and free use" language does not imply a prohibition on all state and municipal regulation of the use of and access to such waters. See, *e.g., Escanaba & Lake Michigan Transportation Co. v. City of Chicago*, 107 U.S. 678, 689, 27 L. Ed. 442, 447, 2 S. Ct. 185, 194 (1882) (upholding a municipal restriction of commercial navigation of the Chicago River based upon the "navigable waters *** shall be common highways *** and forever free" language of the Northwest Territory Ordinance of 1787). It should also be noted that the Corps' inclusion of the "full and free use" condition in the permit does not express a particularized concern that municipal regulation of boat launches poses a threat to the use of navigable waters. See *Boone v. United States*, 725 F. Supp. 1509, 1523 (D. Haw. 1989), *aff'd*, 944 F.2d 1489 (9th Cir. 1991) (Corps acknowledges "full and free use" condition was included in virtually all permits it issued). Furthermore, the plain and inescapable construction of the phrase "unreasonable interference" permits a

municipality to reasonably interfere with navigation. Finally, at oral argument an attorney for plaintiffs conceded his clients use their personal watercraft for entertainment, not transportation purposes.

In light of the foregoing, I cannot agree the Ordinance runs afoul of the conditions set forth in the permit. The Ordinance does not prevent navigation of the Batavia section by personal watercraft. On the contrary, the Ordinance (1) allows all boats—including personal watercraft—to navigate the Batavia section seven days a week; (2) allows personal watercraft aficionados to use the launch to access the Batavia section $1^1/_2$ days a week; (3) limits the use of the launch for a discrete group of boaters—those piloting personal watercraft—not all boaters; and (4) is based upon the factual finding of a legislative body—the Batavia Park District—that the use of personal watercraft gives rise to public policy concerns not implicated by the use of other watercraft. I would find that the Ordinance neither prevents the full and free use of the Batavia section nor unreasonably interferes with navigation.

Furthermore, I believe that the majority's second holding under federal law is based on an unequivocally inapplicable precedent. As the majority concedes, *Buckley* involved a condition set forth in the enabling regulations to a federal statute not at issue in the present case. The so-called federal right recognized by the majority was dependent on the contractual obligations present in *Buckley* arising from the defendant's acceptance of funds under the Fish Act; because the defendant used such appropriations to build a launch, it was obligated to accommodate " 'power boats with common horsepower ratings.' " (Emphasis omitted.) *Buckley*, 66 F.3d at 192, quoting 50 C.F.R. § 80.24 (1995). In the present case, the Fish Act is not at issue. There is no generalized federal right of access for personal watercraft via municipal boat launch facilities.

The true rationale for the majority's ruling appears to be this: it disagrees with the policy judgment exercised by defendant. The majority repeatedly asserts defendant has "unreasonably" singled out one type of watercraft. The majority also states "a regulation applies *equally* to all." (Emphasis added.) 283 Ill. App. 3d at 974. It is a quintessentially legislative function to classify—and therefore differentiate—similarly situated but distinguishable individuals. Provided "a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631, 134 L. Ed. 2d 855, 865, 116 S. Ct. 1620, 1627 (1996); see also *Opyt's Amoco, Inc. v. Village of South Holland*, 149 Ill. 2d 265, 270 (1992) (if a statute prohibits certain activities, such

activities must have a causal relationship to the harm the legislature seeks to guard against or else the exercise of the police power is void). The users of personal watercraft are not a suspect class and the piloting of personal watercraft for entertainment purposes is not a fundamental right. The Ordinance is rationally related to legitimate ends, and there is a causal relationship between the activity regulated and the harms identified with that activity. At this point the judicial inquiry should end. I believe it is improper for a court to weigh the wisdom of a legislative body's choice to adopt one rational and reasonable policy option rather than another.

I respectfully dissent.